**ORIGINAL**

**RONALD FISHER**
NAME

**F24258**
PRISON IDENTIFICATION/BOOKING NO.

**P.O. BOX 7500 PELICAN BAY STATE PRISON**
ADDRESS OR PLACE OF CONFINEMENT

**CRESCENT CITY, CA 95532**

Note: It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his name, address, telephone and facsimile numbers, and e-mail address.

CLERK, U.S. DISTRICT COURT
JAN - 7 2011
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Fee Due

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**RONALD FISHER**
FULL NAME (Include name under which you were convicted)

Petitioner,

v.

**G.D. LEWIS**
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:

**CV11-00256-DMG (OP)**

To be supplied by the Clerk of the United States District Court

☐ _____ **AMENDED**

### PETITION FOR WRIT OF HABEAS CORPUS
### BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION _____
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)
CV _____
CV _____

RECEIVED
CLERK, U.S. DISTRICT COURT
JAN - 5 2011
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

### INSTRUCTIONS - PLEASE READ CAREFULLY

1. To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2. In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3. Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4. Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5. You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

5. You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

6. When you have completed the form, send the original and two copies to the following address:
Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☒ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue
   a. Place of detention  *PELICAN BAY STATE PRISON*
   b. Place of conviction and sentence  *LOS ANGELES COUNTY SUPERIOR COURT COMPTON DIVISION*

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).
   a. Nature of offenses involved (*include all counts*):  *2ND DEGREE ROBBERY*

   b. Penal or other code section or sections:  *PENAL CODE 211, P.C 12022.53(D), P.C 186.22(B)(1) P.C 1170.12 (A)-(D), 667 (A)(1)*

   c. Case number:  *SUPER CT. NO TA093749*
   d. Date of conviction:  *11-10-08*
   e. Date of sentence:  *3-26-09*
   f. Length of sentence on each count:  *COUNT 1) 211 2ND DEGREE ROBBERY, 2 Count 1) PC 12022.53(D) 25 to LIFE, COUNT 1) PC 186.22(B)(1)(C) 10 YEARS, PC 1170.12 (A)-(D) 2 YEARS, PC 667(A)(1) 5 YEARS*

   g. Plea (*check one*):

   ☒ Not guilty

   ☐ Guilty

   ☐ Nolo contendere

   h. Kind of trial (*check one*):

   ☒ Jury

   ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?   ☒ Yes  ☐ No

   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):

   a. Case number:  *CASE NO B215305*
   b. Grounds raised (*list each*):
      (1)  *SEE ATTACH SHEET OF PAPER 2-A FOR LIST OF GROUNDS RAISED*

CONTINUE FROM PAGE 2 QUESTION ~~#~~#3

GROUNDS RAISED

1. THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE FIREARM ENHANCEMENT SHOULD BE REVERSED BECAUSE THE TRIAL COURT REFUSED TO GIVE AN ACCIDENT INSTRUCTION.

2. THE TRUE FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT MUST BE REVERSED BECAUSE THE PROSECUTION EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT APPELLANT COMMITTED THE ROBBERY FOR THE BENEFIT OF A CRIMINAL STREET GANG.

3. THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT SHOULD BE REVERSED BECAUSE THE PROSECUTION EVIDENCE FAILED TO PROVE THAT APPELLANT COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL ACTIVITY BY GANG MEMBERS.

4. THE FEDERAL DUE PROCESS CLAUSE AND THE SIXTH AMENDMENT RIGHT TO A JURY DETERMINATION OF THE FACTS REQUIRE REVERSAL OF THE TRUE FINDING TO THE GANG ENHANCEMENT BECAUSE THE GANG INSTRUCTION FAILED TO REQUIRE THE JURY TO DETERMINE WHETHER APPELLANT COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS.

5. THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGEMENT OF GUILT BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED A DEFENSE MOTION TO EXCLUDE THE VICTIM'S IDENTIFICATION OF APPELLANT AS ONE OF THE ROBBERS

6. THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGEMENT OF GUILT BECAUSE THE TRIAL COURT ABUSED IT'S DISCRETION BY DENYING APPELLANTS MOTION TO BIFURCATE THE GANG ALLEGATIONS

7. APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW AND SIXTH AMENDMENT RIGHT TO TRIAL BY FAIR AND IMPARTIAL JURORS WERE VIOLATED WHEN THE TRIAL COURT FAILED TO CONDUCT AN INQUIRY TO DETERMINE IF JUROR MISCONDUCT OCCURRED ~~court~~ AFTER THE JURORS SENT A NOTE REQUESTING TO BE ESCORTED FROM THE

2A

COURTHOUSE FOLLOWING THE RETURN OF THE VERDICTS; ALTERNATIVELY, THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW AND SIXTH AMENDMENT RIGHT TO A TRIAL BY FAIR AND IMPARTIAL JURORS BY DENYING APPELLANT'S MOTION FOR A NEW TRIAL.

8. THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE FIREARM ENHANCEMENT UNDER PENAL CODE SECTION 12022.53, SUBDIVISION (d)), BECAUSE THE PROSECUTION EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT THE VICTIM SUFFERED GREAT BODILY INJURY.

//                                                                              "

//                                                                              "

//                                                                              "

4B

(2) _____

(3) _____

(4) _____

(5) _____

(6) _____

c.  Date of decision: _July 22, 2010_____

d.  Result _THE ONE YEAR ENHANCEMENT IMPOSED PURSUANT TO SECTION 667.5 SUBDIVISION (B) IS STRICKEN. AS SO MODIFIED THE JUDGMENT IS AFFIRMED_

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision?  ☒Yes    ☐ No

    If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)*:

    a.  Case number: ____S185339_____

    b.  Grounds raised *(list each)*:

    (1) _ATTACHED IS supreme court Ruling And Petition for Review_

    (2) _____

    (3) _____

    (4) _____

    (5) _____

    (6) _____

    c.  Date of decision: _NOVEMBER 10, 2010_____

    d.  Result _THE PETITION FOR REVIEW IS DENIED_

    _____

5.  If you did not appeal:

    a.  State your reasons _____

    _____

    _____

    _____

    _____

    b.  Did you seek permission to file a late appeal?    ☐ Yes    ☐ No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

    ☐ Yes    ☒No

    If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

---

a.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

b.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

c.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?      ☐ Yes   ☐ No

7.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the <u>facts</u> supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

**CAUTION:**   *Exhaustion Requirement*: In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court. This means that, prior to seeking relief from the federal court, you first must present <u>all</u> of your grounds to the California Supreme Court.

a.   Ground one: _PETITIONER FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE FIREARM ENHANCEMENT SHOULD BE REVERSED, BECAUSE THE (Continue on 5A)_

(1) Supporting FACTS: _THE JURY FOUND TRUE A FIREARM ENHANCEMENT THAT PETITIONER PERSONALLY AND INTENTIONALLY DISCHARGED A FIREARM IN THE COMMISSION OF THE ROBBERY WHICH CAUSED GREAT BODILY INJURY. HOWEVER THERE WAS EVIDENCE THAT THE GUN WAS ACCIDENTLY DISCHARGED WHEN THE VICTIM AND THE PETITIONER STRUGGLED. PENAL CODE SECTION 12022.53,(Continue 5A)_

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?     ☐ Yes    ☒ No

b.   Ground two: _THE CRIMINAL STREET GANG ENHANCEMENT MUST BE REVERSED BECAUSE THE PROSECUTION EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW (Continue on 5B)_

(1) Supporting FACTS: _SEE PAGE 5B_

_____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?     ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?     ☒ Yes    ☐ No

CV-69 (04/05)                                                                                                          Page 5 of 10

CONTINUE FROM PAGE 5

GROUND ONE

THE TRIAL COURT REFUSED TO GIVE AN ACCIDENT INSTRUCTION

CONTINUE FROM PAGE 5

SUPPORTING FACTS.

SUBDIVISION (C), IMPOSES A SENTENCE OF 20 YEARS FOR ANY PERSON WHO "PERSONALLY AND INTENTIONALLY DISCHARGES A FIREARM" IN THE COMMISSION OF SPECIFIED FELONIES. SECTION 12022.53 IMPOSES A SENTENCE OF 25 YEARS TO LIFE FOR ANY PERSON WHO "PERSONALLY AND INTENTIONALLY DISCHARGE A FIREARM AND PROXIMATELY CAUSES GREAT BODILY INJURY" IN THE COMMISSION OF SPECIFIED FELONIES. HENCE, BOTH ENHANCEMENTS REQUIRE THE INTENTIONAL DISCHARGE OF A FIREARM.

BECAUSE THE TRIAL COURT'S FAILURE TO GIVE AN ACCIDENT INSTRUCTION FOR THE FIREARM ENHANCEMENTS VIOLATED PETITIONER'S RIGHT TO FEDERAL DUE PROCESS OF LAW, THE TRUE FINDINGS TO THE FIREARM ENHANCEMENTS UNDER SECTION 12022.53, SUBDIVISIONS (C) AND (D), MUST BE REVERSED UNLESS THE FAILURE TO GIVE THE ACCIDENT INSTRUCTION WAS HARMLESS BEYOND A REASONABLE DOUBT.

THE TESTIMONY OF ONE WITNESS, INCLUDING THE DEFENDANT, MAY CONSTITUTE SUBSTANTIAL EVIDENCE TO WARRANT A REQUESTED INSTRUCTION. IN DECIDING WHETHER THERE IS SUBSTANTIAL EVIDENCE TO SUPPORT A REQUESTED INSTRUCTION, THE TRIAL COURT MAY NOT DETERMINE THE CREDIBILITY OF WITNESSES. THAT IS FOR THE JURY TO DECIDE THE CREDIBILITY OF A WITNESS.

THE TRIAL COURT'S FAILURE TO GIVE AN ACCIDENT INSTRUCTION WAS NOT HARMLESS BEYOND A REASONABLE DOUBT. THE TRIAL COURT'S OBSERVATION OF THE EVIDENCE COULD REASONABLY BE CONSTRUED TO ESTABLISH APPELLANT ACCIDENTLY DISCHARGED THE GUN ESTABLISHED PREJUDICE FROM THE FAILURE TO GIVE THE INSTRUCTION. THERE WAS NO CLEAR EVIDENCE APPELLANT INTENTIONALLY DISCHARGED THE FIREARM. IT WAS PERFECTLY REASONABLE APPELLANT ACCIDENTLY DISCHARGED IT BECAUSE MR. CRUZ WAS

5A

TRYING to GRAB it FROM HIS HAND. THE TRUE FINDING to THE FIREARM ENHANCEMENT UNDER SECTION 12022.53, SUBDIVISIONS (C) AND (D) MUST BE REVERSED.

CONTINUE FROM PAGE 5

GROUND TWO

TO PROVE THAT APPELLANT COMMITTED THE ROBBERY FOR THE BENEFIT OF A CRIMINAL STREET GANG.

SUPPORTING FACTS.

THE JURY FOUND TRUE THE ALLEGATION THAT APPELLANT COMMITTED THE ROBBERY to BENEFIT A CRIMINAL STREET GANG. A PROSECUTION EXPERT WITNESS TESTIFIED THAT APPELLANT COMMITTED THE CRIME to BENEFIT HIS GANG. THERE WAS NO OTHER EVIDENCE THAT THE ROBBERY WAS GANG RELATED. THE SPECULATIVE OPINION TESTIMONY OF THE PROSECUTION GANG EXPERT WAS INSUFFICIENT to PROVE THAT APPELLANT COMMITTED THE ROBBERY to BENEFIT A CRIMINAL STREET GANG.

THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS SAFEGUARD APPELLANT FROM CRIMINAL LIABILITY " EXCEPT UPON EVIDENCE THAT IS SUFFICIENT FAIRLY to SUPPORT A CONCLUSION THAT EVERY ELEMENT HAS BEEN ESTABLISHED BEYOND A REASONABLE DOUBT.

A REVIEWING COURT MUST REVIEW THE WHOLE RECORD IN THE LIGHT MOST FAVORABLE to THE JUDGMENT BELOW to DETERMINE WHETHER it DISCLOSES SUBSTANTIAL EVIDENCE, THAT IS EVIDENCE WHICH IS REASONABLE, CREDIBLE, AND OF SOLID VALUE. SUCH THAT A REASONABLE TRIER OF FACT COULD FIND THE DEFENDANT GUILTY BEYOND A REASONABLE DOUBT.

THE QUANTUM OF EVIDENCE NECESSARY to SUSTAIN A VERDICT MUST EXCEED THAT WHICH RAISES A MERE SUSPICION OF GUILT. EVIDENCE WHICH MERELY RAISES A STRONG SUSPICION OF THE DEFENDANT's GUILT IS NOT SUFFICIENT to SUPPORT A CONVICTION. SUSPICION IS NOT EVIDENCE; it MERELY RAISES A POSSIBILITY, AND THIS IS NOT A SUFFICIENT BASIS FOR AN INFERENCE OF FACT.

SB

TO JUSTIFY A CRIMINAL CONVICTION, THE TIER OF FACT MUST BE REASONABLY PERSUADED TO A NEAR CERTAINTY.

SUBSTANTIAL EVIDENCE TO AFFIRM A CONVICTION IS EVIDENCE WHICH, WHEN VIEWED IN LIGHT OF THE ENTIRE RECORD, IS OF SOLID PROBATIVE VALUE, MAINTAINS ITS CREDIBILITY AND INSPIRES CONFIDENCE THAT THE ULTIMATE FACT IT ADDRESSES HAS BEEN JUSTLY DETERMINED.

SECTION 186.22 SUBDIVISION (b)(1)(c), IMPOSES AN ENHANCEMENT FOR ANY PERSON WHO IS CONVICTED OF A FELONY COMMITTED FOR THE BENEFIT OF, AT THE DIRECTION OF, OR IN ASSOCIATION WITH ANY CRIMINAL STREET GANG, WITH THE SPECIFIC INTENT TO PROMOTE, FURTHER, OR ASSIST IN ANY CRIMINAL CONDUCT BY GANG MEMBERS. SECTION 186.22 SUBDIVISION (b)(1) DOES NOT CRIMINALIZE MERE GANG MEMBERSHIP. THE PURPOSE OF THIS SECTION IS TO IMPOSE INCREASED CRIMINAL PENALTIES WHEN: 1) THE CRIMINAL CONDUCT IS FELONIOUS; 2) THE FELONY WAS COMMITTED FOR THE BENEFIT OF, AT THE DIRECTION OF, OR IN ASSOCIATION WITH A GROUP THAT MEETS THE STATUTORY CONDITIONS OF A CRIMINAL STREET GANG; AND 3) THE FELONY WAS COMMITTED WITH THE SPECIFIC INTENT TO PROMOTE, FURTHER OR ASSIST IN ANY CRIMINAL CONDUCT BY GANG MEMBERS. MEMBERSHIP BY ITSELF IS NOT SUFFICIENT TO SATISFY THE REQUIREMENT OF THE STATUTE.

THE ONLY EVIDENCE OFFERED BY THE PROSECUTION DOES NOT MEET THE STANDARD STATED ABOVE (LINE 13-18) 1). THE DEFENDANT'S MEMBERSHIP IN TWO DIFFERENT GANGS. 2) THE COMMISSION OF THE ROBBERY IN AN AREA CLAIMED BY THE EASTSIDE HUSTLER'S STREET GANG; AND 3) THE OPINION OF DETECTIVE REYES THAT THE ROBBERY WAS COMMITTED TO BENEFIT THE DEFENDANTS GANGS. THE PROSECUTION HAD TO PROVE THAT THE PETITIONER BEYOND A REASONABLE COMMITTED THE ROBBERY WITH THE SPECIFIC INTENT TO PROMOTE A CRIMINAL STREET GANG RATHER THAN ENGAGING IN A PERSONAL ENDEAVOR.

5E

THE PROSECUTION HAD THE BURDEN OF PROVING BEYOND A REASONABLE DOUBT WITH SOLID AND CREDIBLE EVIDENCE THAT PETITIONER COMMITTED THE ROBBERY TO BENEFIT A CRIMINAL STREET GANG. SPECULATIVE EXPERT WITNESS TESTIMONY DID NOT SATISFY THAT BURDEN. THE TRUE FINDING TO THE GANG ENHANCEMENT MUST BE REVERSED AND PETITIONER'S SENTENCE REDUCED ACCORDINGLY.

"

"

"

SD

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☒ No

c.  Ground three: _PETITIONER'S FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT (CONTINUE ON 6A)_

(1) Supporting FACTS: _THE JURY FOUND TRUE THE ALLEGATION THAT PETITIONER COMMITTED THE ROBBERY TO BENEFIT A CRIMINAL STREET GANG. THE PROSECUTION FAILED TO PRESENT ANY EVIDENCE AND PETITIONER COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS. TWO CASES FROM THE NINTH CIRCUIT HAVE CONCLUDED THAT (CONTINUE ON 6A)_

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☒ No

d.  Ground four: _PETITIONER'S FEDERAL DUE PROCESS CLAUSE AND THE SIXTH AMENDMENT RIGHT TO A JURY DETERMINATION OF THE FACTS REQUIRE REVERSAL OF THE TRUE FINDING (CONTINUE ON 6B)_

(1) Supporting FACTS: _THE PROSECUTION WAS REQUIRED TO PROVE THAT PETITIONER COMMITTED THE ROBBERY WITH THE INTENT TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS. THE JURY INSTRUCTIONS FAILED TO REQUIRE THE JURY TO MAKE THIS FACTUAL DETERMINATION. THIS FAILURE DEPRIVED THE PETITIONER OF HIS RIGHT TO FEDERAL DUE PROCESS OF LAW AND SIXTH AMENDMENT RIGHT (CONTINUE ON 6B)_

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☒ No

e.  Ground five: _PETITIONER FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED (CONTINUE 6D)_

(1) Supporting FACTS: _PETITIONER FILED A MOTION TO EXCLUDE HIS IDENTIFICATION BY MR. CRUZ AS ONE OF THE ROBBERS BECAUSE A PHOTOGRAPHIC LINEUP SHOWN TO HIM BY THE POLICE WAS SUGGESTIVE. THE PHOTOGRAPH WAS SUGGESTIVE BECAUSE PETITIONER'S EYES WERE NOT IN ALIGNMENT. PETITIONER HAD A UNIQUE PHYSICAL CHARACTERISTIC OF HAVING MISALIGNED EYES. (CONTINUE ON 6D)_

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes    ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☒ No

CONTINUE FROM PAGE 6

GROUND THREE

SHOULD BE REVERSED BECAUSE THE PROSECUTION EVIDENCE FAILED TO PROVE THAT PETITIONER COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL ACTIVITY BY GANG MEMBERS.

CONTINUE FROM PAGE 6

SUPPORTING FACTS.

THE PROSECUTION MUST PRESENT EVIDENCE THAT THE DEFENDANT INTENDED TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS OTHER THAN THE TARGET CRIME IN ORDER FOR A GANG ENHANCEMENT TO BE FOUND TRUE. SEVERAL CALIFORNIA COURT OF APPEAL DECISIONS HAVE REJECTED THAT INTERPRETATION OF THE GANG STATUTE

THIS COURT SHOULD FOLLOW THE NINTH CIRCUIT AND HOLD THAT THE DEFENDANT MUST INTEND TO PROMOTE CRIMINAL CONDUCT BY GANG MEMBERS OTHER THAN THE TARGET CRIME IN ORDER FOR A GANG ENHANCEMENT TO BE PROVED TRUE BEYOND A REASONABLE DOUBT.

THE PETITIONER INCORPORATES THE DISCUSSION OF THE STANDARD OF REVIEW FROM GROUNDS TWO IN THIS PORTION OF THE BRIEF. THE FEDERAL DUE PROCESS CLAUSE REQUIRED THE PROSECUTION TO PROVE BEYOND A REASONABLE DOUBT THAT PETITIONER COMMITTED THE ROBBERY FOR THE BENEFIT OF A CRIMINAL STREET GANG IN ORDER FOR THIS COURT TO AFFIRM THE TRUE FINDING TO THAT ALLEGATION.

IN RESOLVING THIS ISSUE, THIS COURT SHOULD LOOK TO THE PLAIN LANGUAGE OF THE STATUTE. A STATUTE SHOULD BE INTERPRETED TO GIVE MEANING TO EVERY WORD IF POSSIBLE AND TO AVOID A CONSTRUCTION MAKING ANY WORD SURPLUSAGE.

"                                                          "

"                                                          "

6A

WITH SUCH BROAD AND GENERAL OPINION TESTIMONY FAILED TO SATISFY THE PROSECUTION BURDEN OF PROVING PETITIONER INTENDED TO PROMOTE THE COMMISSION OF A SPECIFIC CRIME OR CRIMES. THE PROSECUTOR'S OPENING ARGUMENT FOCUSED ON HOW THE COMMISSION OF THE ROBBERY ENHANCED THE STATUS OF PETITIONER'S GANG. THE PROSECUTOR DID NOT IDENTIFY SOME OTHER CRIME PETITIONERS INTENDED TO PROMOTE BY GANG MEMBERS BY COMMITTING THE ROBBERY. THE EVIDENCE SHOWED THAT THE PETITIONER COMMITTED A ROBBERY IN CONCERT WITH ANOTHER INDIVIDUAL. THERE WAS SCANT EVIDENCE ESTABLISHING THAT IT WAS A GANG RELATED INCIDENT OR A CRIME COMMITTED TO PROMOTE OTHER CRIMINAL ACTIVITY BY GANG MEMBERS. THE TRUE FINDING TO THE GANG ENHANCEMENT MUST BE REVERSED.

CONTINUE FROM PAGE 6

GROUND FOUR

TO THE GANG ENHANCEMENT BECAUSE THE GANG INSTRUCTION FAILED TO REQUIRE THE JURY TO DETERMINE WHETHER PETITIONER COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS.

CONTINUE FROM PAGE 6

SUPPORTING FACTS

TO A JURY DETERMINATION OF FACTS. THERE WAS NO EVIDENCE PETITIONER COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS, THE TRUE FINDING TO THE GANG ENHANCEMENT MUST BE REVERSED

AFTER DEFINING THE PHRASES "CRIMINAL STREET GANG," "PATTERN OF CRIMINAL ACTIVITY," AND "PRIMARY ACTIVITES," THE GANG INSTRUCTION THEN STATED IN RELEVANT PART:

THE ESSENTIAL ELEMENTS OF THIS ALLEGATION ARE:

1. THE CRIMES CHARGED WERE COMMITTED FOR THE BENEFIT OF, AT THE DIRECTION OF, OR IN ASSOCIATION WITH A CRIMINAL STREET GANG; AND

2. THESE CRIMES WERE COMMITTED WITH THE SPECIFIC INTENT TO PROMOTE, FURTHER, OR ASSIST IN ANY CRIMINAL CONDUCT BY GANG MEMBERS.

THE DEFICIENCY IN THE INSTRUCTION WAS THAT IT ALLOWED THE JURY TO FIND THAT THE ELEMENT, "THE CRIMES WERE COMMITTED WITH THE SPECIFIC INTENT TO PROMOTE, FURTHER, OR ASSIST IN ANY CRIMINAL CONDUCT BY GANG MEMBERS" WAS SATISFIED BY THE FELONY COMMITTED BY APPELLANT, RATHER THAN REQUIRING THE JURY TO FIND APPELLANT COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS. THIS RESULT WAS NOT CONSISTENT WITH THE TEXT OF SECTION 186.22, SUBDIVISION (b), OR JUDICIAL INTERPRETATION OF THE STATUTE

THE TEXT OF THE STATUTE DEMONSTRATES THAT THE CURRENT FELONY COMMITTED BY THE DEFENDANT CANNOT BE THE CRIMINAL CONDUCT BY GANG MEMBERS WHICH HE PROMOTED, FURTHERED, OR ASSISTED. THE ABOVE REQUIREMENTS ARE ALL INDEPENDENT ELEMENTS OF A VIOLATION OF SECTION 186.22, SUBDIVISION (b).

THE FEDERAL DUE PROCESS CLAUSE REQUIRES THE PROSECUTION TO PROVE EACH ELEMENT OF A CRIMINAL OFFENSE BEYOND A REASONABLE DOUBT. THE TRIAL COURT'S FAILURE TO INSTRUCT ON THE ELEMENTS OF AN OFFENSE VIOLATES A DEFENDANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT AND ARTICLE 1, SECTION 15, OF THE CALIFORNIA CONSTITUTION.

HERE, THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY THAT THE GANG ENHANCEMENT REQUIRED THE PROSECUTION TO PROVE APPELLANT INTENDED TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS RESULTED IN THE JURY NOT MAKING THIS FACTUAL DETERMINATION IN VIOLATION OF APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW.

THE DEFICIENT INSTRUCTION ALSO VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO A JURY DETERMINATION OF THE FACTS. THE JURY WAS REQUIRED TO DETERMINE WHETHER PETITIONER INTENDED TO PROMOTE OTHER CRIMINAL ACTIVITY BY GANG MEMBERS WHEN HE COMMITTED ROBBERY. THE DEFICIENT INSTRUCTION RESULTED IN THE JURY NOT MAKING THIS FACTUAL DETERMINATION

6C

THERE WAS NO TESTIMONY LINKING THE ROBBERY TO OTHER SPECIFIC CRIMINAL ACTIVITY OF A CRIMINAL STREET GANG.

FOR THE REASONS ABOVE, THE TRUE FINDING TO THE GANG ENHANCEMENT MUST BE REVERSED.

CONTINUE FROM PAG 6

GROUNDS FIVE.

A DEFENSE MOTION TO EXCLUDE THE VICTIM'S IDENTIFICATION OF PETITIONER AS ONE OF THE ROBBERS.

CONTINUE FROM PAGE 6

SUPPORTING FACTS.

THE COURT ERRED BY DENYING THE MOTION TO EXCLUDE MR. CRUZ'S IDENTIFICATION OF PETITIONER BECAUSE OF PETITIONER MISALIGNED EYES. THIS ERROR WAS PREJUDICIAL, THE JUDGMENT OF GUILT MUST BE REVERSED.

MR. CRUZ'S IDENTIFICATION OF PETITIONER AS THE ROBBER WAS BASED ON PETITIONER'S "FACIAL DEFECT." THE PROSECUTION DID NOT FILE A WRITTEN OPPOSITION. THE TRIAL COURT HELD AN EVIDENTIARY HEARING ON PETITIONER'S MOTION.

MR. CRUZ TESTIFIED ABOUT THE ROBBERY, THE DESCRIPTION HE PROVIDED TO THE POLICE, AND THE PHOTOGRAPHS HE WAS SHOWN BY THE POLICE. HE IDENTIFIED THE PERSON IN POSITION NUMBER (3) THREE AS THE INDIVIDUAL WHO POINTED THE GUN AT HIM.

WHEN MR. CRUZ WAS INTERVIEWED BY THE POLICE AFTER THE ROBBERY, HE COULD NOT RECALL SAYING ANYTHING ABOUT THE ROBBER HAVING A DEFECT WITH HIS EYES. HE MENTIONED SOMETHING ABOUT THE EYES OF THE PERSON IN THE PHOTOGRAPHS TO THE POLICE WHEN HE VIEWED THE PHOTOGRAPHIC LINEUP.

THE DEFENSE COUNSEL ARGUED THE PHOTOGRAPH WAS SUGGESTIVE BECAUSE APPELLANTS MISALIGNED EYES MADE HIM STAND OUT FROM THE OTHER INDIVIDUALS. MR. CRUZ COULD ONLY PROVIDE A VAGUE DESCRIPTION OF THE ROBBER WITH THE GUN PRIOR TO VIEWING THE PHOTOGRAPH.

6 D

THE PROSECUTOR CLARIFIED THAT IT WAS THE PEOPLE'S POSITION THAT MR. CRUZ DID NOT PROVIDE THE POLICE WITH ANY INFORMATION ABOUT ONE OF THE ROBBER'S EYES BEING MISALIGNED UNTIL HE SAW THE PHOTOGRAPHS.

A PRE-TRIAL PHOTOGRAPHIC DISPLAY FOR PURPOSE OF IDENTIFICATION VIOLATES A DEFENDANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW WHEN THE PROCEDURE IS UNNECESSARILY SUGGESTIVE AND CONDUCIVE TO IRREPARABLE MISTAKEN IDENTIFICATION.

A PHOTO LINEUP IS SUFFICIENTLY NEUTRAL IF THE PERSON IN THE PHOTOS ARE SIMILAR IN AGE, COMPLEXION, PHYSICAL FEATURES AND BUILD, AND IF THE PHOTO OF THE ACCUSED DOES NOT STAND OUT.

THE TRIAL COURT FOCUSED ON THE APPARENT LACK OF BAD MOTIVE BY THE POLICE IN DETERMINING WHETHER THE PHOTOGRAPHIC LINE WAS SUGGESTIVE. MR. CRUZ DID NOT REPORT ANYTHING TO THE POLICE ABOUT EITHER OF THE ROBBERS HAVING MISALIGNED EYES.

PETITIONER'S MISALIGNED EYES CLEARLY MAKE HIM STAND OUT. IT IS EASILY NOTICEABLE AND CANNOT BE ATTRIBUTED TO ANY EXTERNAL FACTORS SUCH AS A TILTED HEAD.

THE DENIAL OF PETITIONER'S MOTION TO EXCLUDE MR. CRUZ'S IDENTIFICATION WAS NOT HARMLESS BEYOND A REASONABLE DOUBT. MR. CRUZ WAS THE VICTIM AND CLOSEST TO THE ROBBERS. THE JURY MOST LIKELY VIEWED HIS IDENTIFICATION AS CONCLUSIVE EVIDENCE OF THE IDENTITY OF THE ROBBER DESPITE THE SUGGESTIVE NATURE OF THE PHOTOGRAPHIC LINEUP.

AN IDENTIFICATION MADE WITH A SUGGESTIVE PHOTOGRAPHIC LINEUP VIOLATES A DEFENDANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW. THE JUDGMENT MUST BE REVERSED UNLESS THE ERROR WAS HARMLESS BEYOND A REASON DOUBT.

6E

GROUND SIX: PETITIONER FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO BIFURCATE THE GANG ALLEGATIONS.

SUPPORTING FACTS: PRIOR TO THE COMMENCEMENT OF TRIAL TESTIMONY, COUNSEL FOR CO-DEFENDANT WINDOM MOVED TO BIFURCATE THE GANG ALLEGATIONS. PETITIONER JOINED IN THAT MOTION. THE DEFENSE COUNSEL ARGUED THE GANG EVIDENCE WAS PREJUDICIAL AND THERE WAS NO EVIDENCE PETITIONER WAS A MEMBER OF THE GANG WHICH THE PROSECUTION CLAIMED WAS RESPONSIBLE FOR THE CRIME.

THE TRIAL COURT STATED it WAS GOING TO DENY THE MOTION IF ONE OF THE TWO ROBBERS WAS A SELF-ADMITTED GANG MEMBER. COUNSEL FOR CO-DEFENDANT WINDOM ARGUED THE BIFURCATION MOTION SHOULD BE GRANTED BECAUSE: (1) THE VICTIM DID NOT SAY ANYTHING ABOUT GANGS WHEN HE TESTIFIED AT THE PRELIMINARY HEARING; (2) THE ONLY EVIDENCE ESTABLISHING THE ROBBERY WAS GANG RELATED WAS THE TESTIMONY OF THE PROSECUTION GANG EXPERT.

THE PETITIONER WAS ARRESTED SHORTLY AFTER THE INCIDENT. THE POLICE CONNECT THE CASE TO A GANG ONLY AFTER WHEN THE CO-DEFENDANT WAS ARREST SEVERAL DAYS LATER.

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE MOTION TO BIFURCATE THE GANG ALLEGATIONS. THERE WAS NO EVIDENCE THE CRIME WAS GANG RELATED. IT APPEARED TO BE A SIMPLE ROBBERY. THE ADMISSION OF THE GANG EVIDENCE WAS PREJUDICIAL. IT MADE THE JURY likely TO CONVICT PETITIONER SIMPLY BECAUSE HE WAS A GANG MEMBER

THE ADMISSION OF EVIDENCE WHICH RENDERS A TRIAL FUNDAMENTALLY UNFAIR VIOLATES DUE PROCESS OF LAW. THE JURY SHOULD HAVE DETERMINED PETITIONER'S GUILT OF THE ROBBERY WITHOUT HEARING ANY GANG EVIDENCE. INSTEAD, THE JURY HEARD THE TYPICAL PARADE OF HORRIBLE

6F

DETAILS ABOUT PETITIONER'S GANG MEMBERSHIP AND THE CRIMES COMMITTED BY MEMBERS OF HIS GANG.

MOST JURORS ARE READY TO FIND GANG MEMBERS GUILTY OF CRIMES MERELY BECAUSE THEY BELONG TO A GROUP OF INDIVIDUALS WHO ARE A MENACE TO SOCIETY. THE BIFURCATION OF THE GANG ALLEGATIONS WAS THE ONLY WAY TO INSURE PETITIONER HAD A FAIR TRIAL.

THE JUDGMENT MUST BE REVERSED.

(2) DID YOU RAISE THIS CLAIM ON DIRECT APPEAL TO THE CALIFORNIA COURT OF APPEAL? YES

(3) DID YOU RAISE THIS CLAIM IN A PETITION FOR REVIEW TO CALIFORNIA SUPREME COURT? YES.

(4) DID YOU RAISE THIS CLAIM IN A HABEAS PETITION TO THE CALIFORNIA SUPREME COURT? NO.

GROUND SEVEN.

PETITIONER'S RIGHT TO FEDERAL DUE PROCESS OF LAW AND SIXTH AMENDMENT RIGHT TO TRIAL BY FAIR AND IMPARTIAL JURORS WERE VIOLATED WHEN THE TRIAL COURT FAILED TO CONDUCT AN INQUIRY TO DETERMINE IF JUROR MISCONDUCT OCCURRED AFTER JURORS SENT A NOTE REQUESTING TO BE ESCORTED FROM THE COURTHOUSE FOLLOWING THE RETURN OF THE VERDICTS; ALTERNATIVELY, THE TRIAL COURT VIOLATED PETITIONER'S RIGHT TO FEDERAL DUE PROCESS OF LAW AND SIXTH AMENDMENT RIGHT TO A TRIAL BY FAIR AND IMPARTIAL JURORS BY DENYING PETITIONER'S MOTION FOR A NEW TRIAL.

SUPPORTING FACTS:

PRIOR TO THE READING OF THE VERDICTS, THE TRIAL COURT ANNOUNCED THE JURORS HAD SENT A NOTE REQUESTING TO BE ESCORTED FROM THE COURTHOUSE. THE DEFENSE ATTORNEYS REQUESTED THE TRIAL COURT TO QUESTION THE JURORS TO DETERMINE WHY THEY WERE IN FEAR. THE TRIAL

66

COURT REFUSED THIS REQUEST. PETITIONER ALS FILE A MOTION FOR A NEW TRIAL, WHICH WAS SUPPORTED BY A DECLARATION FROM PETITIONER'S MOTHER. THE TRIAL COURT ERRED BY FAILING TO INQUIRE OF THE JURORS TO DETERMINE IF MISCONDUCT HAD OCCURRED. THE TRIAL COURT DENIED THE MOTION FOR A NEW TRIAL.

AFTER THE TRIAL JUDGE INFORMED THE ATTORNEYS OF THIS NOTE, HE STATED HE HAD NOTICED A GROUP OF YOUNG AFRICAN-AMERICAN MALES IN THE BACK OF THE COURTROOM DURING THE TRIAL WHO WERE DRESSED IN DARK SHIRTS OR DARK T-SHIRTS.

THE DEFENSE ATTORNEYS REQUESTED THE TRIAL COURT TO INDIVIDUALLY QUESTION THE JURORS. THE PROSECUTOR OPPOSED THE REQUEST BECAUSE IT WAS A PUBLIC TRIAL AND THE DEFENSE ATTORNEYS HAD EARLIER OPPOSED A REQUEST TO EXLUDE CO-DEFENDANT WINDOWS GANG ASSOCIATES FROM THE COURTROOM.

PETITIONER'S COUNSEL ARGUED THAT THE JURORS DURING VOIR-DIRE HAD STATED THAT THEY DID NOT HAVE A PROBLEM BEING A JUROR IN A CASE INVOLVING GANG ALLEGATIONS, AND "NOW WE GET A NOTE THE VERY NEXT DAY THE INDIVIDUALS SHOW UP THAT THEY WANT AN ESCORT ESPECIALLY BECAUSE THIS IS A GANG CASE. WE ALL KNOW WHAT THAT MEANS. THEY ARE AFRAID. THE ONLY THING THAT COULD HAVE CAUSED THAT FEAR ARE THESE FOUR TO FIVES MALES COMING TO COURT DRESSED UP IN GANG CLOTHING, WHITE SHIRTS AND BLACK PANTS AS DESCRIBED BY THE VICTIM. THAT THE ONLY FACTOR THAT COURT CAN SEE THAT CAUSED THIS FEAR."

PETITIONER FILED A MOTION FOR A NEW TRIAL. THE MOTION ARGUED THAT A NEW TRIAL SHOULD BE GRANTED BECAUSE: (1) JUROR MISCONDUCT OCCURRED; (2) SPECTATOR MISCONDUCT OCCURRED; AND (3) THE TRIAL COURT ERRED BY FAILING TO CONDUCT AN INQUIRY OF THE JURORS AFTER THE JUROR SENT THE NOTE REQUESTING AN ESCORT FROM THE COURTHOUSE

THE MOTION WAS SUPPORTED BY A DECLARATION FROM PETITIONER'S MOTHER. THE DECLARATION STATES ONE JUROR IN PARTICULAR APPEARED VERY

6H

CONCERNED AND WORRIED ABOUT THE PRESENCE OF THE GANG MEMBERS.

THE PROSECUTION FILED AN OPPOSITION TO THE MOTION FOR A NEW TRIAL.

A JUROR KEPT SHIFTING HER EYES TOWARDS THE AUDIENCE MEMBERS WITH A LEERY APPEARANCE. THE INDIVIDUALS WHISPERED TO EACH OTHER AND STARED DOWN THE JURORS. SEVERAL OF THE INDIVIDUALS FROM THE COURTROOM GOT ON THE ELEVATOR WITH JUROR AND STARED DOWN THE JURORS.

A DEFENDANT IN A CRIMINAL CASE HAS A RIGHT UNDER BOTH THE FEDERAL AND STATE CONSTITUTION TO HAVE THE CHARGES AGAINST HIM DETERMINED BY A FAIR AND IMPARTIAL JURY, BECAUSE A DEFENDANT CHARGED WITH A CRIME HAS A RIGHT TO THE UNANIMOUS VERDICT OF 12 IMPARTIAL JURORS. A CONVICTION CANNOT STAND IF EVEN A SINGLE JUROR HAS BEEN IMPROPERLY INFLUENCED.

ONCE A COURT HAS BEEN PUT ON NOTICE OF THE POSSIBILITY THAT A JUROR HAS BEEN EXPOSED TO IMPROPER OR EXTERNAL INFLUENCES," IT IS THE COURT'S DUTY TO MAKE WHATEVER INQUIRY IS REASONABLY NECESSARY TO DETERMINE IF THE JUROR SHOULD BE DISCHARGED AND FAILURE TO MAKE THIS INQUIRY MUST BE REGARDED AS ERROR.

THE DEFENSE COUNSEL WAS UNABLE TO DETERMINE HOW SUCH EVENTS INFLUENCED JUROR'S ATTITUDES TOWARDS THE CASE UNLESS THE TRIAL COURT QUESTIONED THE JURORS. THE TRIAL COURT'S FAILURE TO QUESTION THE JURY VIOLATED PETITIONER'S RIGHT TO DUE PROCESS OF LAW AND SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO A JURY TRIAL. BOTH THE SIXTH AMENDMENT AND THE DUE PROCESS CLAUSE GUARANTEE A CRIMINAL DEFENDANT THE RIGHT TO TRIAL BY A FAIR JURY.

THE TRIAL COURT SHOULD HAVE KNOWN THIS JURY WAS NOT FAIR AND IMPARTIAL BASED ON ITS NOTE REQUESTING AN ESCORT OUT OF THE COURTHOUSE THE DEFENSE COUNSEL MADE A TIMELY REQUEST TO VOIR-DIRE THE JURY ONCE ITS FEAR BECAME EVIDENT.

THE SIXTH AMENDMENT AND THE DUE PROCESS CLAUSE GUARANTEE

6 I

OF A FAIR TRIAL REQUIRE REVERSAL OF PETITIONER'S CONVICTION BECAUSE THE JURY'S NOTE REQUESTING AN ESCORT FROM THE COURTHOUSE ESTABLISHED THAT PETITIONER WAS NOT TRIED BY A FAIR JURY.

IMPARTIALITY IS NOT A TECHNICAL CONCEPT. IT IS A STATE OF MIND. ACTUAL BIAS IS THE EXISTENCE OF ~~ACTUAL~~ ~~BIAS~~ A STATE OF MIND ON THE PART OF THE JUROR, WHICH WILL PREVENT THE JUROR FROM ACTING WITH ENTIRE IMPARTIALITY AND WITHOUT PREJUDICE TO THE SUBSTANTIAL RIGHTS OF ANY PARTY.

THIS JURY WAS ACTUALLY BIASED AGAINST PETITIONER. THE JURORS OBVIOUSLY ASSOCIATED THE GANG MEMBERS IN THE COURTROOM WHO WERE ENGAGING IN INTIMIDATING CONDUCT WITH PETITIONER. THIS FEAR MUST HAVE CAUSE THE JURY TO WANT TO PUT PETITIONER AWAY. THERE WAS A STRONG LIKELIHOOD THE JURORS WANTED TO CONVICT PETITIONER BECAUSE OF THE MISCONDUCTS OF INDIVIDUALS WHOM THE JURY INEVITABLY ASSOCIATED WITH PETITIONER. PETITIONER DID NOT HAVE THE OPPORTUNITY TO MAKE SURE THIS FEAR HAD NOT INFECTED THE DELIBERATION PROCESS. PETITIONER'S RIGHT TO AN UNBIASED AND IMPARTIAL JURY UNDER BOTH STATE AND FEDERAL LAW WAS VIOLATED AND HIS CONVICTION SHOULD BE REVERSED.

(2) DID YOU RAISE THIS CLAIM ON DIRECT APPEAL TO CALIFORNIA COURT OF APPEAL? YES

(3) DID YOU RAISE THIS CLAIM IN A PETITION FOR REVIEW TO THE CALIFORNIA SUPREME COURT? YES

(4) DID YOU RAISE THIS CLAIM IN A HABEAS PETITION TO THE CALIFORNIA SUPREME COURT? NO.

"
"
"
"

6 J

GROUND EIGHT: PETITIONER FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE FIREARM ENHANCEMENT UNDER PENAL CODE SECTION 12022.53, SUBDIVISION (D), BECAUSE THE PROSECUTION EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT THE VICTIM SUFFERED GREAT BODILY INJURY.

SUPPORTING FACTS:

THE JURY FOUND TRUE THE FIREARM ENHANCEMENT ALLEGED UNDER SECTION 12022.53, SUBDIVISION (D). THAT STATUE IMPOSES A SENTENCE OF 25 YEARS TO LIFE IN STATE PRISON FOR ANY PERSON WHO PERSONALLY AND INTENTIONALLY DISCHARGES A FIREARM AND PROXIMATELY CAUSE GREAT BODILY INJURY, AS DEFINED IN SECTION 12022.7

GREAT BODILY INJURY MEANS A SIGNIFICANT OR SUBSTANTIAL PHYSICAL INJURY.

A FINE LINE CAN DIVIDE AN INJURY FROM BEING SIGNIFICANT OR SUBSTANTIAL FROM AN INJURY THAT DOES NOT QUITE MEET THE DESCRIPTION.

GREAT BODILY INJURY DOES NOT REQUIRE THE VICTIM TO SUFFER PERMANENT, PROLONGED, OR PROTRACTED BODILY DAMAGE.

PROOF THAT A VICTIM SUFFERED GREAT BODILY INJURY IS COMMONLY ESTABLISHED THE VICTIM'S PHYSICAL INJURY, THE RESULTING PAIN, OR THE MEDICAL CARE REQUIRED TO TREAT OR REPAIR THE INJURY.

THE FEDERAL DUE PROCESS REQUIRES THE PROSECUTION TO PROVE BEYOND A REASONABLE DOUBT THAT ALL THE ELEMENTS OF THE SECTION 12022.53, SUBDIVISION (D), ENHANCEMENT, INCLUDING THE GREAT BODILY INJURY REQUIREMENT.

MR. CRUZ WAS SHOT IN THE ARM. WHEN THE TRIAL COURT DESCRIBED THE LOCATION OF THE JURY, IT WAS AS FOLLOWS: "HE RAISED HIS RIGHT FOREARM AND POINTED WITH HIS LEFT INDEX FINGER TO THE INNER PORTION OF HIS RIGHT FOREARM ABOUT THREE INCHES BELOW THE ELBOW JOINT IN THE INTERIOR.

MR. CRUZ HAS A SCAR FROM BEING SHOT. HE RECEIVED MEDICAL TREATMENT AT THE HOSPITAL FOR THE WOUND. HE LOST BLOOD AS A RESULT OF THE SHOOTING

6 K

THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THAT MR. CRUZ SUFFERED GREAT BODILY INJURY. A SCAR BY ITSELF DOES NOT ESTABLISH GREAT BODILY INJURY. THE SCAR COULD HAVE BEEN THE RESULT OF A MINOR WOUND. THE LOST OF BLOOD ALSO DOES NOT ESTABLISH GREAT BODILY INJURY. A GRAZING WOUND THAT WAS MINOR IN NATURE COULD CAUSE BLEEDING.

A PHOTOGRAPH OF THE SCAR WAS NOT ADMITTED INTO EVIDENCE. THERE IS NO WAY THIS COURT CAN DETERMINE THE VICTIMS SUFFERED GREAT BODILY INJURY BASED ON THIS RECORD. THERE WAS NO EVIDENCE MR. CRUZ SPENT THE NIGHT IN THE HOSPITAL. THERE WAS NO EVIDENCE THE BULLET PENETRATED HIS BODY THE INJURY SUFFERED BY MR. CRUZ WAS SUBSTANTIALLY LESS SERIOUS THAN THE INJURIES SUFFERED BY THE VICTIMS IN THE CASES OF PEOPLE V. WOLCOTT (1983) 34 CAL. 3d 92, 107-108, PEOPLE V. LOPEZ, SUPRA, 176 CAL. APP. 3d at p. 465 AND PEOPLE V. MENDIAS (1993) 17 CAL. APP. 4th 195.

It APPEARS MR. CRUZ WAS GRAZED BY THE BULLET. THE RECORD IS SIMPLY TO SPARSE FOR THIS COURT TO CONCLUDE MR. CRUZ SUFFERED BODILY INJURY AS A RESULT BEING SHOT. THE TRUE FINDING TO THE SECTION 12022.53, SUBDIVISION (D), ENHANCEMENT MUST BE REVERSED.

DATE  12/20/10                    SIGNATURE  Ronald Fisher

RESPECTFULLY SUBMITTED.
RONALD FISHER F24258
PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CALIF 95532
IN PROPIA PERSONA

6L

8. If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: _____

_____

_____

9. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes    ☒ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

a. (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?    ☐ Yes   ☐ No

b. (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?    ☐ Yes    ☐ No

10. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?    ☐ Yes    ☒ No

   If so, give the following information *(and attach a copy of the petition if available)*:

   (1) Name of court: _____

   (2) Case number: _____

   (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

   (4) Grounds raised *(list each)*:

   (a) _____

   (b) _____

   (c) _____

   (d) _____

   (e) _____

   (f) _____

11. Are you presently represented by counsel?    ☐ Yes    ☒ No

   If so, provide name, address and telephone number: _____

   _____

   _____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,

_____

*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _12/20/10_                    _Ronald Fisher_
                    *Date*                              *Signature of Petitioner*

_RONALD FISHER_____
*Petitioner*

DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
IN FORMA PAUPERIS

_G.D. LEWIS_____
*Respondent(s)*

I, _RONALD FISHER_____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1.  Are you presently employed? ☐ Yes  ☒ No

    a.  If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer. _____
    _____

    b.  If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received. _____

2.  Have you received, within the past twelve months, any money from any of the following sources? *NO*

    a.  Business, profession or form of self-employment?    ☐ Yes  ☒ No

    b.  Rent payments, interest or dividends?    ☐ Yes  ☒ No

    c.  Pensions, annuities or life insurance payments?    ☐ Yes  ☒ No

    d.  Gifts or inheritances?    ☐ Yes  ☒ No

    e.  Any other sources?    ☐ Yes  ☒ No

    If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months: _____
    _____
    _____

3.  Do you own any cash, or do you have money in a checking or savings account? *(Include any funds in prison accounts)*

    ☐ Yes  ☒ No

    If the answer is yes, state the total value of the items owned: _____
    _____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☐ Yes ☒ No

   If the answer is yes, describe the property and state its approximate value: _____

   _____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: *NONE* _____

   _____

   _____

I, declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

Executed on __12/20/10__          __Ronald Fisher__
                *Date*                        *Signature of Petitioner*

## CERTIFICATE

   I hereby certify that the Petitioner herein has the sum of $_____ on account to his credit

at the _____ institution where he is

confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said

institution: _____

   _____

   _____

_____          _____
         *Date*                          *Authorized Officer of Institution/Title of Officer*

SUPREME COURT NO._____

## IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) Court of Appeal |
| Plaintiff and Appellant, | )   No. B215305 |
| | ) |
| v. | ) Super. Ct. No. |
| | )   TA093749 |
| RONALD FISHER, | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |
| _____ _____ | ) |

**APPELLANT'S PETITION FOR REVIEW OF THE
UNPUBLISHED DECISION BY THE COURT OF APPEAL
FOR THE SECOND APPELLATE DISTRICT, DIVISION
THREE, IN CASE NUMBER B215305, AFFIRMING IN
PART AND REVERSING THE JUDGMENT OF THE
SUPERIOR COURT OF LOS ANGELES COUNTY**

John L. Staley
Attorney at Law
CBN 129624
11770 Bernardo Plaza Court.
Suite 305
San Diego, CA 92128

(858) 613-1047

Attorney for
Appellant by
Appointment of the
Court of Appeal under
the CAP independent
case system

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED FOR REVIEW  . . . . . . . . . . . . . . . . . . . . . . 2

NECESSITY FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I   REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE TRIAL
    COURT DENIED APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF
    LAW, AND SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO A JURY
    DETERMINATION OF THE FACTS, BY FAILING TO GIVE A DEFENSE
    REQUESTED ACCIDENT INSTRUCTION IN CONNECTION WITH THE
    ENHANCEMENT ALLEGATION ALLEGING APPELLANT DISCHARGED
    A FIREARM WITHIN THE MEANING OF PENAL CODE SECTION
    12022.53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II  REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER: (A) AS A
    MATTER OF STATUTORY INTERPRETATION, AND FEDERAL DUE
    PROCESS OF LAW AND APPELLANT'S SIXTH AND FOURTEENTH
    AMENDMENTS RIGHT TO A JURY DETERMINATION OF THE FACTS,
    THE TRUE FINDING TO THE GANG ENHANCEMENT MUST BE
    REVERSED BECAUSE THE GANG INSTRUCTION FAILED TO REQUIRE
    THE JURY TO DETERMINE WHETHER APPELLANT COMMITTED THE
    ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG
    MEMBERS; AND (B) THE FEDERAL DUE PROCESS CLAUSE REQUIRES
    REVERSAL OF THE TRUE FINDING TO THE CRIMINAL STREET GANG
    ENHANCEMENT BECAUSE THE EVIDENCE WAS INSUFFICIENT AS A
    MATTER OF LAW TO PROVE THAT COMMITTED THE ROBBERY TO
    PROMOTE OTHER CRIMINAL ACTIVITY BY GANG MEMBERS . . . . . . . 19

III REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE
    FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE
    FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT BECAUSE
    THE PROSECUTION EVIDENCE WAS INSUFFICIENT AS A MATTER OF
    LAW TO PROVE THAT APPELLANT COMMITTED THE ROBBERY FOR
    THE BENEFIT OF A CRIMINAL STREET GANG  . . . . . . . . . . . . . . . . . . . . 24

IV  REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE
    FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE

JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED A DEFENSE MOTION TO EXCLUDE THE VICTIM'S IDENTIFICATION OF APPELLANT AS ONE OF THE ROBBERS . . . . . . . . 31

V       REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO BIFURCATE THE GANG ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

VI      REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW, AND SIXTH AMENDMENT TIGHT TO TRIAL BY FAIR AND IMPARTIAL JURORS, WERE VIOLATED WHEN THE TRIAL COURT FAILED TO CONDUCT AN INQUIRY TO DETERMINE IF JUROR MISCONDUCT OCCURRED AFTER THE JURORS SENT A NOTE REQUESTING TO BE ESCORTED FROM THE COURTHOUSE FOLLOWING THE RETURN OF THE VERDICTS; ALTERNATIVELY, WHETHER THE TRIAL COURT VIOLATED APPELLANT'S AFOREMENTIONED CONSTITUTIONAL RIGHTS BY DENYING HIS MOTION FOR A NEW TRIAL . . . . . . . . . . . . . . . . . . . . . . . . 45

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Briceno v. Schreiber* (9th Cir. 2009) 555 F.3d 1069 . . . . . . . . . . . . . . . . . . . . . . 7, 21, 22

*Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 . . . . . . . 18, 37

*Conners v. United States* (1895) 158 U.S. 408, 15 S.Ct. 951, 39 L.Ed. 1033 . . . . . . . . 51

*Emery v. Clark* (9th Cir. 2010) 604 F.3d 1102 . . . . . . . . . . . . . . . . . . . . . . . 7, 21, 22

*Estelle v. McGuire* (1991) 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 . . . . . . . . . 9, 42

*Ham v. South Carolina* (1973) 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 . . . . . . . 51, 52

*Irvin v. Dowd* (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 . . . . . . . . . . . . . 50, 52

*Jackson v. Virginia* (1979) 443 U.S. 307, 61 L.Ed.2d 560, 99 S.Ct. 2781 . . . . . . 8, 22, 24

*Garcia v. Carey* (9th Cir. 2005) 395 F.3d 1099 . . . . . . . . . . . . . . . . . . . . . . . 7, 20-22

*Martin v. Ohio* (1987) 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 . . . . . . . . . . 17, 18

*Ristaino v. Ross* (1976) 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 . . . . . . . . . . . . 50

*Simmons v. United States* (1968) 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 . . . . . 22

*Stovall v. Denno* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 . . . . . . . 8, 33, 37

*United States v. Gaudin* (1995) 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 . . . . . 22

*United States v. Wood* (1936) 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 . . . . . . . . . . . 22

### STATE CASES

*Evans v. Superior Court* (1974) 11 Cal.3d 617 . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*In re Frank S.* (2006) 141 Cal.App.4th 1192 . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25, 26

*People v. Albarran* (2007) 149 Cal.App.4th 214 . . . . . . . . . . . . 8, 26, 28, 29, 40, 42, 43

*People v. Borghesi* (Colo. S.Ct. 2003) 66 P.3d 93 . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*People v. Burgener* (1985) 41 Cal.3d 505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*People v. Chavez* (1991) 231 Cal.App.3d 1471 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*People v. Carlos* (2006) 138 Cal.App.4th 907 . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

*People v. Cleveland* (2001) 25 Cal.4th 466 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*People v. DeSantis* (1992) 2 Cal.4th 1198 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Earle* (2009) 172 Cal.App.4th 372 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*People v. Gardeley* (1996) 14 Cal.4th 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v. Gordon* (1990) 50 Cal. 3d 1223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*People v. Hamilton* (1999) 20 Cal.4th 273 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*People v. Hernandez* (2004) 33 Cal.4th 1040 . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 40, 41

*People v. Hill* (2006) 142 Cal.App.4th 770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21

*People v. Holt* 1972) 28 Cal.App.3d 343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*People v. Jones* (1991) 234 Cal.App.3d 1303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 17

*People v. Killebrew* (2002) 103 Cal.App.4th 644 . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v. Lara* (1996) 44 Cal.App.4th 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. McDonald* (1984) 37 Cal.3d 351 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 43

*People v. McNeal* (1979) 90 Cal.App.3d 830 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

*People v. Nesler* (1997) 16 Cal.4th 561 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 52, 53

iv

*People v. Ochoa* (1998) 19 Cal.4th 353 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 34

*People v. Ramirez* (2006) 39 Cal.4th 398 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*People v. Ramon* (2009) 175 Cal.App.4th 843 . . . . . . . . . . . . . . . . . . . 8, 25, 26, 29, 30

*People v. Reyes* (1998) 19 Cal.4th . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*People v. Romero* (2006) 140 Cal.App.4th 15 . . . . . . . . . . . . . . . . . . . . . . . . . 6, 21

*People v. Sanders* (1990) 51 Cal.3d 471 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Vasquez* (2009) 178 Cal.App.4th 347 . . . . . . . . . . . . . . . . . . . . . . . . 6

*People v. Wickersham* (1982) 32 Cal.3d 307 . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Thurmond* (1985) 175 Cal.App.3d 865 . . . . . . . . . . . . . . . . . . . . . . . 16

## STATE STATUTES

Article I, section 16 of the California Constitution . . . . . . . . . . . . . . . . . . . . . . . . 48

Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . 2, 13, 48

Evidence Code section 352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Penal Code section 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16, 17

Penal Code section 186.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 19, 20, 24

Penal Code section 211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Penal Code section 667 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Penal Code section 667.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Penal Code section 1089 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

Penal Code section 1120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 50

Penal Code section 11022 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Penal Code section 12022.53 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 11, 13, 15, 17, 18

Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 48

## SECONDARY AUTHORITIES

CALCRIM 3404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

SUPREME COURT NO._____

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) Court of Appeal |
| Plaintiff and Appellant, | )   No. B215305 |
| | ) |
| v. | ) Super. Ct. No. |
| | )   TA093749 |
| RONALD FISHER, | ) |
| | ) |
| Defendant and Appellant. | ) |
| | ) |
| | ) |

APPELLANT'S PETITION FOR REVIEW OF THE UNPUBLISHED DECISION BY THE COURT OF APPEAL FOR THE SECOND APPELLATE DISTRICT, DIVISION THREE, IN CASE NUMBER B215305, AFFIRMING IN PART AND REVERSING THE JUDGMENT OF THE SUPERIOR COURT OF LOS ANGELES COUNTY

TO THE HONORABLE CHIEF JUSTICE AND THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Appellant and Defendant RONALD FISHER respectfully petitions this Court for review of the unpublished decision of the Court of Appeal, Second Appellate District, Division Three, affirming in part and reversing in part the judgment of the Superior Court of Los Angeles County.

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. WHETHER THE TRIAL COURT DENIED APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW, AND SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO A JURY DETERMINATION OF THE FACTS, BY FAILING TO SUA SPONTE GIVE A DEFENSE REQUESTED ACCIDENT INSTRUCTION IN CONNECTION WITH THE ENHANCEMENT ALLEGATION ALLEGING APPELLANT DISCHARGED A FIREARM WITHIN THE MEANING OF PENAL CODE SECTION 12022.53?

2. WHETHER: (A) AS A MATTER OF STATUTORY INTERPRETATION, AND FEDERAL DUE PROCESS OF LAW AND APPELLANT'S SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO A JURY DETERMINATION OF THE FACTS, THE TRUE FINDING TO THE GANG ENHANCEMENT MUST BE REVERSED BECAUSE THE GANG INSTRUCTION FAILED TO REQUIRE THE JURY TO DETERMINE WHETHER APPELLANT COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS; AND (B) THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT BECAUSE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL ACTIVITY BY GANG MEMBERS?

3. WHETHER THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL

OF THE TRUE FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT BECAUSE THE PROSECUTION EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT APPELLANT COMMITTED THE ROBBERY FOR THE BENEFIT OF A CRIMINAL STREET GANG?

4. WHETHER THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED A DEFENSE MOTION TO EXCLUDE THE VICTIM'S IDENTIFICATION OF APPELLANT AS ONE OF THE ROBBERS?

5. WHETHER THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO BIFURCATE THE GANG ALLEGATIONS?

6. WHETHER APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW, AND SIXTH AMENDMENT TIGHT TO TRIAL BY FAIR AND IMPARTIAL JURORS, WERE VIOLATED WHEN THE TRIAL COURT FAILED TO CONDUCT AN INQUIRY TO DETERMINE IF JUROR MISCONDUCT OCCURRED AFTER THE JURORS SENT A NOTE REQUESTING TO BE ESCORTED FROM THE COURTHOUSE FOLLOWING THE RETURN OF THE VERDICTS; ALTERNATIVELY, WHETHER THE TRIAL COURT VIOLATED APPELLANT'S AFOREMENTIONED CONSTITUTIONAL RIGHTS BY DENYING HIS MOTION FOR A NEW TRIAL?

## NECESSITY FOR REVIEW

This case presents important issues of law within the meaning of California Rule of Court 8.500, subdivision (b)(1). It also presents issues in which published appellate court opinions are in conflict.

Following a jury trial, appellant was found guilty of a single count of robbery. The jury also found true the allegations that appellant personally discharged a firearm in the commission of the offense and committed the offense for the benefit of a criminal street gang. This case presents several issues which warrant a grant of review. The other issues are being raised to preserve appellant's right to include them in a federal petition for a writ of habeas corpus.

Appellant pointed a gun at the victim during the robbery. The victim reached for the gun and appellant's hand to deflect the gun from pointing at him. The gun discharged. The jury found true the enhancement that appellant personally discharged a firearm during the commission of the robbery. The evidence suggested that appellant accidently discharged the gun when the victim reached for it. The trial court did not give an accident instruction for the personal discharge of a firearm enhancement. Appellant argued on appeal that the trial court erred by failing to sua sponte give an accident instruction. The Court of Appeal found the evidence of accident weak and also concluded that the failure to give the instruction was harmless error. (Appendix A at p. 24.)

The issue that warrants a grant of review is whether an accident instruction was

4

required under the above circumstances. The Attorney General argued that the defense of accident was not available to appellant as a matter of law for the personal discharge of a firearm enhancement because appellant was committing a robbery. Penal Code section 26, paragraph Five, provides that a crime is not committed where the person who committed the act or omission did so, "through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." The Attorney General's position was that the accident defense was not available even if appellant accidently discharged the firearm because of the "no evil design, intention, or culpable negligence," language in the statute. The Court of Appeal noted that *People v. Jones* (1991) 234 Cal.App.3d 1303, implicitly rejected the prosecution's argument because it held that an accident instruction should have been given even though the shooter was unlawfully pointing the gun at the victim prior to its discharged.

Firearm enhancements are pled in connection with an underlying crime. Hence, in every situation in which a firearm enhancement is pled, the defendant will be engaged in the commission of some other criminal activity. There are no published cases directly resolving whether an accident instruction can be given for a firearm enhancement. The enactment of Penal Code section 12022.53 significantly increased the consequences of committing a crime with a firearm. Section 12022.53, subdivision (d), imposes a sentence of 25 years to life in prison for any defendant who "personally and intentionally" discharges a firearm in the commission of specified felonies. This reasoning of the Attorney General would eliminate

5

the defense of accident to a firearm enhancement as a matter of law. This Court should grant review to determine whether an accident instruction should be given when the defendant is charged with the personal discharge of a firearm enhancement and the evidence suggests the gun was discharged through accident.

The next two issues deal with essentially the same legal issue. The jury found that appellant committed the robbery for the benefit of a criminal street gang within the meaning of Penal Code section 186.22, subdivision (b)(1)(C). Appellant argued on appeal that the evidence was insufficient to prove the gang enhancement because the prosecution failed to prove that appellant committed the robbery for the purpose of promoting other criminal activity by gang members. Appellant also argued that the gang instruction should have been tailored to instruct the jury that the gang enhancement could be found true only if appellant committed the crime to promote other criminal activity by gang members. The California appellate courts are in conflict with the Ninth Circuit on this issue. Several California cases have held that it is not necessary for the defendant to commit the underlying crime with the intention of promoting other criminal activity by gang members in order for the gang enhancement to be found true. These cases have expressly rejected a contrary interpretation of section 186.22, subdivision (b)(1)(C), adopted by the Ninth Circuit. (See *People v. Vasquez* (2009) 178 Cal.App.4th 347, 353-355; *People v. Hill* (2006) 142 Cal.App.4th 770, 774-775; *People v. Romero* (2006) 140 Cal.App.4th 15, 20.) The Ninth Circuit has held that the defendant must commit the crime for the purpose of promoting other criminal activity by

6

gang members in order for the gang enhancement to be found true. (*Briceno v. Schreiber* (9th Cir. 2009) 555 F.3d 1069, 1079-1080; *Garcia v. Carey* (9th Cir. 2005) 395 F.3d 1099, 1103.)

In *Emery v. Clark* (9th Cir. 2010) 604 F.3d 1102, 1103-1104, the Ninth Circuit certified the above issue to this Court and stayed further proceedings. On June 23, 2010, this Court granted the Ninth Circuit's request and deferred decision pending *People v. Albillar*. (http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=1943018 &doc_no=S182670 [California Supreme Court docket entry].) The Ninth Circuit in *Emery v. Clark* noted, however, that *People v. Albillar* did not necessarily require resolution by this Court of the it had certified. (*Emery v. Clark, supra*, 604 F.3d at p. 1104, fn. 5.) Review should be granted in this case to resolve the above issue. Alternatively, review should be granted and the case should be stayed pending this Court's resolution of the issue certified to it by the Ninth Circuit in *Emery v. Clark*.

The next issue also deals with the sufficiency of the evidence to prove the truth of the gang enhancement. This Court granted review in *People v. Albillar*, Case No. S1282670 (review granted Aug. 13, 2008) on the issue of the sufficiency of the evidence to support the true finding to a criminal street gang enhancement. Appellant committed the robbery with an individual who was a member of a different gang. The crime occurred in gang territory. There was no other evidence the robbery was gang related or committed to benefit a gang. The facts of this case are substantially indistinguishable from published appellate court cases which found the evidence insufficient to prove a gang enhancement or to prove that a crime

7

was gang related. (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851; *People v. Albarran* (2007) 149 Cal.App.4th 214, 227; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1199.) The federal due process clause required the prosecution to prove the truth of the gang enhancement beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 309, 61 L.Ed.2d 560, 99 S.Ct. 2781.) This Court should grant review and hold resolution of the case pending the decision in *People v. Albillar*.

The next three issues are being raised to preserve appellant's right to include them in a federal petition for a writ of habeas corpus. The trial court denied appellant's motion to exclude the victim's identification of him as the robber. The identification was made from a six pack of photographs shown to the victim by a police officer. Appellant has the unique characteristic of slightly misaligned eyes. His eyes are not on the same horizontal plane. The victim noticed this defect in appellant's eyes during the commission of the robbery. (3 RT p. 911.) During the hearing on the motion to exclude the victim's identification of appellant as the robber, the victim testified that appellant's eyes appeared misaligned in the photograph he viewed that was part of the six pack of photographs. (3 RT p. 911.) The trial court found the photographic lineup was not unduly suggestive and denied the motion. The Court of Appeal affirmed. For the reasons below, the victim identified appellant in an unduly suggestive photographic lineup which violated appellant's right to due process of law. (*Stovall v. Denno* (1967) 388 U.S. 293, 301-302, 87 S.Ct. 1967, 18 L.Ed.2d 1199.)

Appellant requested the trial court to bifurcate the admission of evidence pertaining

8

to the gang allegations. The trial court denied the motion. The gang evidence was of marginal relevance to this case. The robbery in this case was an ordinary armed street robbery which lacked any indicia of gang connection. The jury nevertheless heard the typical testimony from a gang expert about how the violent nature of appellant's gang and the details of crimes which had nothing to do with appellant or the crime charged in this case. In *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049, this Court ruled that the trial court has the discretion to bifurcate the litigation of gang allegations in order to minimize prejudice to defendants. The instant case presented the classic situation in which bifurcation was warranted. The denial of appellant' bifurcation motion rendered appellant's trial fundamentally unfair in violation of the federal due process clause. (*Estelle v. McGuire* (1991) 502 U.S. 62, 70, 112 S.Ct. 475, 116 L.Ed.2d 385.)

Prior to the jury returning a verdict, it sent a note to the trial court requesting that the jurors be escorted to their cars following the return of a verdict. The note expressed concerns by the jurors for their safety and noted the trial involved gang members. (2 CT p. 204.) The defense counsel requested the trial court to individually question the jurors to determine if misconduct had occurred or if they were prejudiced against appellant. (5 RT p. 2702.) The trial court denied the motion. Appellant filed a motion for a new trial which argued that the verdict had to be vacated because the note established bias by the jurors and the trial court failed to take any curative action. (2 CT pp. 264-279.) The motion was supported by a declaration from appellant's mother which stated that gang members entered the courtroom

the day closing arguments occurred and also glared at jurors. (2 CT p. 278.) The trial court denied appellant's motion for a new trial following an evidentiary hearing. (5 RT pp. 3021-3023.) For the reasons below, the due process clause required the trial court to have granted appellant's motion for a new trial.

## STATEMENT OF THE CASE AND FACTS

An amended information filed on March 13, 2008, alleged appellant committed robbery in violation of Penal Code section 211.[1] The amended information further alleged: (1) appellant personally discharged a firearm in the commission of the offense and caused great bodily injury within the meaning of section 12022.53, subdivision (d); (2) appellant personally and intentionally discharged a firearm in the commission of the offense within the meaning of section 12022.53, subdivision (c); (3) a principal was armed in the commission of the offense within the meaning of section 12022, subdivision (a)(1); (4) appellant committed the crime for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C); (5) a principal personally and intentionally discharged a firearm in the commission of the offense and caused great bodily injury within the meaning of section 12022.53, subdivision (d); (6) a principal personally and intentionally discharged a firearm in the commission of the offense within the meaning of section 12022.53, subdivisions (c) and (e)(1); and (7) a principal personally used a firearm in the commission of the offense within the meaning of section 12022.53, subdivisions (b) and (e). The amended also alleged appellant had been convicted of two violent or serious felonies within the meaning of section 667, subdivisions (b) through (i), had been convicted of a serious felony within the meaning of section 667, subdivision (a)(1), and had served a prior prison term within the meaning of section 667.5, subdivision (b). (1 CT pp. 109-112.)

---

[1] All future references are to the Penal Code unless otherwise stated.

11

Trial testimony commenced on October 31, 2008. (3 RT p. 935.) The jury found appellant guilty of robbery and found true all the firearm enhancements and the criminal street gang enhancement. (5 RT pp. 2710-2712.) Appellant admitted the truth of the strike allegation for the conviction in case number SA058153, that he had been convicted of a serious felony within the meaning of section 667, subdivision (a)(1), and had served a prior prison term within the meaning of section 667.5, subdivision (b). (5 RT pp. 2721-2722.)

The sentencing hearing occurred on March 26, 2009. (5 RT pp. 3301-3308.) The trial court sentenced appellant to the low term of two years in state prison and doubled that sentence because of the strike. The trial court imposed a consecutive five year term for the serious felony enhancement, a consecutive 10 year term for the gang enhancement, a consecutive term of 25 years to life for the firearm enhancement under section 12022.53, subdivision (d), and a consecutive one-year term for the prior prison enhancement. (5 RT pp. 3305-3306.)

On July 22, 2010, the Court of Appeal affirmed in part and reversed in part the judgment of the Superior Court in an unpublished opinion. The Court of Appeal reversed the one-year sentence imposed for the prior prison enhancement. It otherwise affirmed the judgment of the Superior Court. (Appendix A at p. 35.) Appellant incorporates the statement of facts as set forth in the opinion of the Court of Appeal. (Appendix A at pp. 2-5.)

I

**REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE TRIAL COURT DENIED APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW, AND SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO A JURY DETERMINATION OF THE FACTS, BY FAILING TO GIVE A DEFENSE REQUESTED ACCIDENT INSTRUCTION IN CONNECTION WITH THE ENHANCEMENT ALLEGATION ALLEGING APPELLANT DISCHARGED A FIREARM WITHIN THE MEANING OF PENAL CODE SECTION 12022.53**

Mr. Cruz testified to the following sequence of events during the robbery:

Q. At some point in time you reached up with your right hand and grabbed the gun; is that right?

A. Yes.

Q. And there was a struggle for a bit?

A. Yes.

Q. Were you trying to take the gun out of the hand of suspect one?

A. I tried to remove it from my hand. That's all.

Q. Just move it out of the way, you mean?

A. Yes.

Q. That's when the gun fired?

A. Yes.

13

Q. That's when you were struck in the right arm?

A. Yes.

(4 RT p. 1225.)

The defense counsel requested the trial court to give an accident instruction. (5 RT pp. 2105-2108.) During that discussion, the trial court noted that, "there are multiple inferences that arise from Mr. Cruz's testimony that I can summarize from my notes as I did yesterday. The gun was put to his head. He grabbed it. They struggled. He was shot in the arm. There are multiple inferences from that. While one inference is that the defendant trigger finger accidently pulled the trigger and he didn't intend to do it while they were jostling with the gun or it could be as another deputy testified in a civil rights case that I had when he shot my plaintiff that he had an involuntary muscle reaction or an inference could be that while they were jostling with the gun, he shot him to make him stop doing that." (5 RT p. 2107.) Despite the above observation, the trial court nevertheless believed there was not substantial evidence to warrant an accident instruction. (*Ibid.*) The trial court apparently believed that appellant had to prove that he did not act with evil design, intent, or culpable negligence in order to warrant an accident instruction. (5 RT p. 2105.) The trial court appeared to be focused on the fact that appellant was committing a robbery when the gun was discharged and could not therefore satisfy any of the above three prongs. This reasoning was erroneous because the evidence appellant accidently discharged the gun went to the issue of whether the firearm enhancement was true and not appellant's guilt of the robbery charge.

14

The defense counsel then made an additional argument in support of the accident instruction. He stated:

> Mr. Atherton: This is just for the record. I think the substantial evidence is, in addition to what the court said, that circumstantial evidence shows that Mr. Cruz was shot in the arm which if you look at —if the gun's to the left of him and he's reaching over with his right hand and grabs the gun, the arm now is in the line of fire. If there was an intentional desire to shoot Mr. Cruz, why is he hit in the arm? It shows that the fact that his arm was shot was because it was just simply in the way when the gun was fired, that it was just simply in the way when the gun was fired, that it was right there. And I think that there's a substantial likelihood when you've got a gun pointing at you and you grab it, try to struggle over it, that gun's going to go off by accident.

(5 RT p. 2108.) The trial court gave jury instructions for the personal and intentional discharge of a firearm within the meaning of Penal Code section 12022.53, subdivisions (c) and (d). (5 RT pp. 2132-2133; CT pp. 29-31.) An accident instruction was not given.

Section 12022.53, subdivision (c), imposes a sentence of 20 years for any person who "personally and intentionally discharges a firearm" in the commission of specified felonies. Section 12022.53 imposes a sentence of 25 years to life for any person who "personally and intentionally discharges a firearm and proximately causes great bodily injury" in the commission of specified felonies. Hence, both enhancements require the intentional discharge of a firearm.

A defendant is entitled to have the court instruct on a defense theory if it is supported by substantial evidence. (*People v. Wickersham* (1982) 32 Cal.3d 307, 324.) Penal Code

15

section 26, subdivision five provides that an act is not a crime when the:

> Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention or culpable negligence.

The jury instructions for the accident defense is CALCRIM 3404. When the defense of accident is raised, the defendant has the burden of proving the absence of evil design, intention, and culpable negligence. (*People v. Thurmond* (1985) 175 Cal.App.3d 865, 871.) The defense of accident is available to a defendant charged with assault. (*People v. Lara* (1996) 44 Cal.App.4th 102, 108-109.

The evidence raised a question of fact whether appellant accidently discharged the firearm. Mr. Cruz testified the gun went off during a struggle. (4 RT p. 1225.) This suggested appellant may not have intentionally discharged the gun. Indeed, the trial court itself stated the evidence raised a reasonable inference appellant accidently discharged the firearm. (5 RT p. 2107.) It was inexplicable that the trial court refused to give an accident instruction when it acknowledged there was evidence appellant accidently discharged the firearm. The trial court stated appellant had to prove that he did not act with evil design, intent, or culpable negligence in order to warrant an accident instruction. (5 RT p. 2105.) The trial court appeared to focus on the fact that appellant was committing a robbery when the gun was discharged and could not therefore satisfy any of the above three prongs. This reasoning was erroneous because the evidence appellant accidently discharged the gun went to the issue of whether the firearm enhancement was true and not appellant's guilt of the robbery. The

assessment of whether appellant acted with evil design, intent, or culpable negligence should have been assessed solely by focusing on the evidence which established an intentional rather than an accidental discharge of a firearm. Mr. Cruz's testimony that the gun discharged during a struggle established a lack of "evil design, intent, and culpable negligence" with regard to that specific act. The wording of section 26, furthermore, does not require all three elements to be established for the defense to apply.

The Attorney General argued that appellant was not entitled to an accident instruction because he was engaged in the commission of a robbery. (Appendix A at p. 23.) This argument, however, would eliminate as a matter of law the defense of accident to any firearm enhancement. Conduct enhancements are always alleged in connection with a substantive crime. A defendant will necessarily, therefore, always be engaged in the commission of some criminal act when the firearm is used. The Court of Appeal noted that *People v. Jones* (1991) 234 Cal.App.3d 1303, 1314, implicitly rejected the Attorney General's argument because it held that an accident instruction should have been given when the defendant claimed the gun accidently discharged while he was pointing it at a law enforcement officer.

The enactment of section 12022.53, significantly increased the penal consequences of committing specified felonies with firearms. This Court should grant review to determine whether an accident instruction can be given when a firearm enhancement is alleged and the defendant presents evidence that the firearm accidently discharged.

*Martin v. Ohio* (1987) 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267, establishes the

17

trial court's failure to an accident instruction violated appellant's right to due process of law. The Court in *Martin v. Ohio* concluded the burden of proving self-defense could be placed on the defendant without violating due process of law. (*Martin v. Ohio, supra*, 480 U.S. at p. 232-233.) The Court noted, however, "It would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case . . . ." (*Martin v. Ohio, supra*, 480 U.S. at p. 233.) An accident instruction was analogous to a self-defense instruction. The trial court's failure to give an accident instruction prevented the jury from having any basis to evaluate that defense and thus deprived appellant of federal due process of law.

The trial court's failure to give an accident instruction was not harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.) The trial court's observation the evidence could reasonably be construed to establish appellant accidently discharged the gun established prejudice from the failure to give the instruction. There was no clear evidence appellant intentionally discharged the firearm. It was perfectly reasonable appellant accidently discharged it because Mr. Cruz was trying to grab it from his hand. The true finding to the firearm enhancements under section 12022.53, subdivisions (c) and (d), must be reversed.

18

## II

**REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER: (A) AS A MATTER OF STATUTORY INTERPRETATION, AND FEDERAL DUE PROCESS OF LAW AND APPELLANT'S SIXTH AND FOURTEENTH AMENDMENTS RIGHT TO A JURY DETERMINATION OF THE FACTS, THE TRUE FINDING TO THE GANG ENHANCEMENT MUST BE REVERSED BECAUSE THE GANG INSTRUCTION FAILED TO REQUIRE THE JURY TO DETERMINE WHETHER APPELLANT COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL CONDUCT BY GANG MEMBERS; AND (B) THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT BECAUSE THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT COMMITTED THE ROBBERY TO PROMOTE OTHER CRIMINAL ACTIVITY BY GANG MEMBERS**

The information alleged that appellant committed the robbery for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1)(C). (1CT 110.) The jury found true the allegation that appellant committed the robbery to benefit a criminal street gang. (5 RT pp. 2710-2712.) The prosecution failed to present any evidence appellant committed the robbery to promote other criminal conduct by gang members. The jury instruction for the gang enhancement did not instruct the jury that appellant had to intend to promote other criminal conduct by gang members in order for the enhancement to be found true. (5 RT p. 2129.)

Appellate courts are split regarding what evidence is required to prove a defendant committed a felony "with the specific intent to promote, further, or assist, in any criminal

conduct by gang members. . . ." (Pen. Code, § 186.22, subd. (b)(1).) In *Garcia v. Carey* (9th Cir. 2005) 395 F.3d 1099, the defendant was convicted of robbery. The jury found the defendant committed the crime to benefit a criminal street gang. The Ninth Circuit Court of Appeals reversed the gang enhancement for insufficient evidence.[2] The prosecution presented evidence the defendant committed the robbery to benefit a criminal street gang. The Ninth Circuit, however, concluded that this was insufficient:

> There is nothing in this record, however, that would support an inference that Garcia robbed Bojorquez with the specific intent to facilitate other criminal conduct by the E.M.F. The evidence indicates that Garcia was a gang member and that he robbed Bojorquez in an area known to be in the heart of the gang's "turf." Detective Hernandez, the gang expert, testified that the gang was ""turf oriented,"" and he described three other robberies committed by E.M.F. members in El Monte during the few months prior to Garcia's offense. But there is no evidence indicating that this robbery was committed with the specific purpose of furthering other gang criminal activity, and there is nothing inherent in the robbery that would indicate that it furthers some other crime. There is nothing on the record that connects the "turf-oriented" nature of the gang with the commission of robberies generally, or, more importantly, with the commission of this robbery in particular. There is no testimony that protection of turf enables any other kind of criminal activity of the gang. The expert's testimony is singularly silent on what criminal activity of the gang was

---

[2]   The decision was two to one. The dissenting judge explained that, "section 186.22 (b)(1) does not require proof that the crime of conviction was committed with the intent to further some other specifically identified crime or category of crimes, and California courts have rejected sufficiency of the evidence claims even where such evidence was entirely lacking." (*Garcia v. Carey, supra,* 395 F.3d at p. 1105 (dis. opn. of Wallace, J.).)

20

furthered or intended to be furthered by the robbery of Bojorquez.

(*Garcia v. Carey, supra,* 395 F.3d at p. 1103.)   In *People v. Romero* (2006) 140 Cal.App.4th 15, rejected the holding of *Garcia* because, "[b]y its plain language, the statute requires a showing of specific intent to promote, further, or assist in 'any criminal conduct by gang members' rather than other criminal conduct." (*People v. Romero, supra,* 140 Cal.App.4th at p. 19; *see also People v. Hill* (2006) 142 Cal.App.4th 770, 774-775.)

The Ninth Circuit again revisited the question in *Briceno v. Scribner* (9th Cir. 2009) 555 F.3d 1069. The Ninth Circuit rejected the holdings in *Romero* and *Hill*, and reaffirmed *Garcia.* (*Id* at pp. 1080-1081.)   The *Briceno* court explained: "To warrant a gang enhancement, California law requires the prosecutor to prove two things. First, the prosecutor must demonstrate that the defendant committed a felony "for the benefit of, at the direction of, or in association with [a] criminal street gang." [Citation.] Second, the prosecutor must show that the defendant committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members." [Citation.] We have previously recognized the importance of keeping these two requirements separate, and have emphasized that the second step is not satisfied by evidence of mere membership in a criminal street gang alone." (*Briceno v. Scribner, supra,* 555 F.3d at p. 1078.) The Ninth Circuit recently certified to this Court the issue of whether the gang enhancement requires the prosecution to prove the defendant committed the crime to promote some other criminal activity by gang members. (*Emery v. Clark* (9th Cir. 2010) 604 F.3d 1102, 1103-1104.)

21

On June 23, 2010, this Court granted the Ninth Circuit's request and deferred decision pending *People v.Albillar* (http://appellatecases.courtinfo.ca.gov/search/case/dockets. cfm?dist=0&doc_id=1943018&doc_no=S182670 [California Supreme Court docket entry].) This case presents the same issue certified to this Court in *Emery v. Clark*. Review should therefore be granted.

If this Court follows the rationale of *Garcia v. Carey* and *Briceno v. Schreiber*, appellant's gang enhancement must be reversed. Under *Garcia*, the prosecution was required to prove that appellant's offense was "committed with the specific purpose of furthering other gang criminal activity." (*Garcia v. Carey, supra*, 395 F.3d at p. 1103.) No evidence was presented at trial to prove that appellant committed the robbery to assist other criminal conduct by gang members. The jury instruction for the gang enhancement did not require the jury to determine that appellant committed the robbery to promote other criminal activity by gang members. The omission of this element violated appellant's right to due process of law and Sixth Amendment right to a jury determination of the facts. (*Jackson v. Virginia* (1979) 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 [the due process clause requires the prosecution to prove each element of an offense beyond a reasonable doubt]; *United States v. Gaudin* (1995) 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 [the defendant has the right to have the jury make the determination of his guilt of each fact necessary to prove the allegations against him].) The jury could not have determined whether appellant committed the robbery to promote other criminal activity by gang members absent an instruction which included that element.

For the reasons above, review should be granted of this issue.

23

### III

### REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE TRUE FINDING TO THE CRIMINAL STREET GANG ENHANCEMENT BECAUSE THE PROSECUTION EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO PROVE THAT APPELLANT COMMITTED THE ROBBERY FOR THE BENEFIT OF A CRIMINAL STREET GANG

Section 186.22, subdivision (b)(1)(C), imposes an enhancement for any person "who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Section 186.22, subdivision (b)(1), does not criminalize mere gang membership. (*People v. Gardeley* (1996) 14 Cal.4th 605, 623.) The purpose of the section is to impose increased criminal penalties when: (1) the criminal conduct is felonious; (2) the felony was committed for the benefit of, at the direction of, or in association with a group that meets the statutory conditions of a criminal street gang; and (3) the felony was committed with the specific intent to promote, further or assist in any criminal conduct by gang members. (*People v. Gardeley, supra,* 14 Cal.4th at 623.) Membership in a gang is not sufficient by itself to satisfy the requirements of the statute. (*People v. Gardeley, supra,* 14 Cal.4th at 623.) The due process clauses of the Fifth and Fourteenth Amendments safeguard appellant from criminal liability "except upon evidence that is sufficient fairly to support a conclusion that every element . . . has been established beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 313-314, 61 L.Ed.2d

24

560, 99 S.Ct.

In the instant case, the only evidence offered by the prosecution to prove the robbery was gang related was: (1) the defendants' membership in two different gangs; (2) the commission of the robbery in an area claimed by the Eastside Hustler's street gang; and (3) the opinion of Detective Reyes that the robbery was committed to benefit the defendants' gangs. (4 RT pp. 1844, 1847-1849, 1856.) The prosecution had to prove beyond a reasonable doubt that appellant committed the robbery with the specific intent to promote a criminal street gang rather than engaging in a personal endeavor. The above evidence failed to carry the prosecution burden.

In *People v. Ramon* (2009) 175 Cal.App.4th 843, the defendant and his fellow gang member were stopped driving a stolen truck. A gun was found inside the truck. A deputy sheriff testified as the prosecution gang expert. He testified that the truck was stopped in the defendant's gang territory. He also testified that the stolen truck and gun were possessed to benefit the defendant's gang. Both the stolen truck and gun could have been used to commit additional crimes for the benefit of the gang. The evidence above was the only evidence offered to prove the crime was committed to benefit a criminal street gang. After discussing the opinions in *People v. Killebrew* (2002) 103 Cal.App.4th 644 and *In re Frank S.* (2006) 141 Cal.App.4th 1192, the Court concluded the evidence was insufficient to prove the crimes were committed for the benefit of a criminal street gang:

> This case cannot be distinguished in a meaningful manner from *Killebrew* or *Frank S.* The People's expert simply informed the jury of how he felt the case should be resolved. This was an

25

improper opinion and could not provide substantial evidence to support the jury's finding. There were no facts from which the expert could discern whether Ramon and Martinez were acting on their own behalf the night they were arrested or were acting on behalf of the Colonia Bakers. While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation. Speculation is not substantial evidence. (*People v. Perez* (1992) 2 Cal.4th 1117, 1133.) To be sufficient, evidence must of course be substantial. It is such only if it reasonably inspires confidence and is of "solid value." By definition, "substantial evidence" requires *evidence* and not mere speculation. In any given case, one "may *speculate* about any number of scenarios that may have occurred.... A reasonable inference, however, may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.... A finding of fact must be an inference drawn from evidence rather than ... a mere speculation as to probabilities without evidence. (Citation omitted.)

(*People v. Ramon, supra,* 175 Cal.App.4th at p. 851.)

The prosecution attempted to distinguish the case from *In re Frank S.* on the basis the defendant was with another gang member and in his gang's territory. The Court rejected this argument because, "These facts, standing alone, are not adequate to establish that Ramon committed the crime with the specific intent to promote, further, or assist criminal conduct by gang members. While Ramon may have been acting with this specific intent, there is nothing in the record that would permit the People's expert to reach this conclusion." (*Ibid.*)

In *People v. Albarran* (2007) 149 Cal.App.4th 214, several individuals fired guns at a house. The defendant was identified as one of the shooters. The defendant was convicted of crimes related to the shooting and carjacking and kidnaping in connection with fleeing the scene. Gang enhancements were also charged. The defendant moved to exclude the gang

26

evidence based on lack of relevance and Evidence Code section 352. The trial court denied the motion because it believed the gang evidence was relevant to intent and motive for the shooting. A prosecution expert testified the defendant was a gang member and that the shooting was gang related. The trial court granted a motion for a new trial as to the gang allegations but denied it as to the other charges. The trial court set aside the gang allegations based on insufficiency of the evidence. The defendant argued that the gang evidence had tainted the jury's findings for the substantive charges. He further argued that absent the gang allegations, none of the gang evidence was admissible and the jury should therefore not have heard gang evidence.

The Court of Appeal concluded there was no evidence the underlying crimes were gang related:

> At trial the prosecutor argued the motive for the shooting was to gain respect and enhance the shooter's reputation-essentially to "earn one's bones" within the gang (i.e., the "respect" motive). In our view, however, there was insufficient evidence to support the contention that this shooting was done with the intent to gain respect. On the contrary, the motive for the underlying crimes, in particular the shooting at Bacelis' house, was not apparent from the circumstances of the crime. The shooting occurred at a private birthday party for Bacelis' cousin. Although according to Deputy Gillis, Bacelis was a member of the Pierce Boys Gang, Bacelis' gang did not have any known or relevant gang rivalries. Deputy Gillis testified that gang members commit crimes to gain respect and enhance their status within the gang. He noted a gang member gains such respect if his identity (or the identity of his gang) becomes known to the victim(s), within the gang community and/or the neighborhood. Yet this shooting presented no signs of gang member's efforts in that regard-there was no evidence the shooters announced their presence or purpose-before, during or after the shooting. There was no

27

evidence presented that any gang members had "bragged" about their involvement or created graffiti and took credit for it. In fact, at the section 402 hearing Deputy Gillis conceded he did not know the reason for the shooting, though he had "heard" that gang members were present at the party. There is nothing inherent in the facts of the shooting to suggest any specific gang motive. In the final analysis, the only evidence to support the respect motive is the fact of Albarran's gang affiliation.

(*People v. Albarran, supra,* 149 Cal.App.4th at p. 227.)

In *In re Frank S., supra,* 141 Cal.App.4th 1192, the defendant was convicted of carrying a dirk or dagger, possession of methamphetamine, and falsely identifying himself to a peace officer. The defendant was while riding a bicycle by a peace officer. Following his arrest, the minor stated that he carried the dirk for protection from the southern gang members. The defendant stated he had friends who were northern gang members. The prosecution expert testified that the defendant himself admitted to being an affiliate of the Nortenos during the intake process at juvenile hall. The expert also testified that the defendant possessed the dirk for protection from rival gangs and to assault rival gangs. The Court noted that, "It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation." (*In re Frank S., supra,* 141 Cal.App.4th at p. 1196.) The Court, however, found the evidence insufficient to prove the defendant possessed the dirk to benefit his gang:

> In the present case, the expert simply informed the judge of her belief of the minor's intent with possession of the knife, an issue reserved to the trier of fact. She stated the knife benefits the Nortenos since "it helps provide them protection should they be assaulted by rival gang members." However, unlike in other cases, the prosecution presented no evidence other than the

28

expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue to establish that possession of the weapon was "committed for the benefit of, at the direction of, or in association with any criminal street gang ...." (§§ 186.22, subd. (b)(1).) The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense. In fact, the only other evidence was the minor's statement to the arresting officer that he had been jumped two days prior and needed the knife for protection. To allow the expert to state the minor's specific intent for the knife without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended.

(*In re Frank S., supra*, 141 Cal.App.4th at p. 1199.)

The above cases compel the conclusion that the evidence was insufficient to prove that appellant committed the robbery to promote a criminal street gang. This case is similar to *People v. Ramon* and *People v. Albarran*. In *People v. Ramon*, the defendant was found with another gang member in possession of a stolen truck and a firearm. They were in gang territory. This evidence was insufficient to prove the crimes were gang related. In *People v. Albarran*, there was no evidence the shooting at the residence was gang related other than the opinion of the prosecution expert. The Court found that opinion insufficient to establish a gang connection to the underlying crime.

Similarly, appellant committed a robbery with another gang member in gang territory. There was no evidence, other than the opinion of the expert, that the robbery was committed to benefit a criminal street gang. The name of the defendants' gangs were not uttered during the robbery. Gang signs were not made during the robbery. There was no evidence the gang

29

received the proceeds of the robbery or that it was committed at the instigation of gang members. It was as likely that appellant and his co-defendant committed the robbery to benefit their own pocket book as it was they committed the robbery to benefit the gang. "While it is possible the two were acting for the benefit of a gang, a mere possibility is nothing more than speculation." (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851.) It was speculation that appellant and co-defendant Windom committed the robbery to benefit their gangs. Speculation does not constitute substantial evidence. (*Ibid.*) The evidence was thus insufficient to prove appellant committed the robbery to benefit a criminal street gang.

This Court granted review in *People v. Albillar*, Case No. S1282670 (review granted Aug. 13, 2008) on the issue of the sufficiency of the evidence to support the true finding to a criminal street gang enhancement. Review should be granted in this case as well and the case held pending the issuance of the opinion in *People v. Albillar*.

IV

**REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED A DEFENSE MOTION TO EXCLUDE THE VICTIM'S IDENTIFICATION OF APPELLANT AS ONE OF THE ROBBERS**

Appellant's motion to exclude Mr. Cruz's identification of appellant as the robber was based on appellant's "facial defect." (1 CT p. 133.) The prosecution did not file a written opposition. The trial court held an evidentiary hearing on appellant's motion. (3 RT pp. 905-922.) Mr. Cruz testified about the robbery, the description he provided to the police, and the photographs he was shown by the police. (3 RT pp. 906-909.) Court Exhibit A was the photographic lineup he was shown by the police. He identified the person in position number three as the individual who pointed the gun at him. (3 RT pp. 910-911.) Mr. Cruz gave the following testimony about the photograph:

Q. Does one eye look like it is lower than the other?

A. Yes.

Q. And it's very noticeable, isn't it?

A. Yes. I did notice that.

Q. And does anybody else in the photograph have a defect like that?

A. I----when he was pointing with the gun, pointing at me with the gun, I saw that defect.

(3 RT p. 911.) When Mr. Cruz was interviewed by the police after the robbery, he could not

31

recall saying anything about the robber having a defect with his eyes. (3 RT pp. 911-912, 914.) He mentioned something about the eyes of the person in the photographs to the police when he viewed the photographic lineup. (3 RT p. 912.)

The defense counsel argued the photograph was suggestive because appellant's misaligned eyes made him stand out 'from the other individuals in the photograph. He noted that Mr. Cruz could only provide a vague description of the robber with the gun prior to viewing the photograph. (3 RT pp. 914-915.) The trial court noted that (1) the photographs in the lineup allow showed black males with similar clothing and a similar general appearance; (2) the police had no reason to be aware of any issue pertaining to misaligned eyes because Mr. Cruz had not mentioned anything about that feature prior to viewing the photographs; and (3) Mr. Cruz's failure to mention anything about misaligned eyes prior to viewing the photographs demonstrated that it was not a feature upon which he was focusing. (3 RT pp. 918-919.) The trial court also stated that it was difficult to notice any misalignment of appellant's eyes as it viewed him in court. The trial court also believed that any misalignment of the eyes in the photograph arguably could have been attributed to the tilt of the head in the photograph. (1 RT p. 919.) The prosecutor clarified that it was the People's position that Mr. Cruz did not provide the police any information about one of the robber's eyes being misaligned until he saw the photographs. (3 RT p. 920.) The trial court denied the motion to exclude Mr. Cruz's photographic identification. (3 RT pp. 919-920.)

A defendant bears the burden of showing an unreliable identification procedure. (*People v. Ochoa* (1998) 19 Cal.4th 353, 412.) The defendant bears the burden of showing

unfairness as a demonstrable reality, not just speculation. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1222.) A pre-trial photographic display for purpose of identification violates a defendant's right to federal due process of law when the procedure is unnecessarily suggestive and conducive to irreparable mistaken identification. (*Stovall v. Denno* (1967) 388 U.S. 293, 301-302, 87 S.Ct. 1967, 18 L.Ed.2d 1199.) A procedure that is unfair suggests the identity of the person in advance of identification by the witness. (*People v. Sanders* (1990) 51 Cal.3d 471, 508.)

The validity of a photographic identification is to be evaluated in light of the particular facts and surrounding circumstances of each case. (*Simmons v. United States* (1968) 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247.) A conviction "based on eyewitness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons v. United States, supra*, 390 U.S. at p. 384.) The courts have adopted a two-part test to determine if an identification procedure should be suppressed because it violates due process:

> The issue of constitutional reliability depends on (1) whether the identification procedure was unduly suggestive and unnecessary; and if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. If, and only if, the answer to the first question is yes and the answer to the second is no, is the identification constitutionally unreliable.

(*People v. Ochoa, supra*, 19 Cal.4th at p. 412, quoting *People v. Gordon* (1990) 50 Cal. 3d 1223, 1242.) A photo lineup is sufficiently neutral if the person in the photos are similar in age, complexion, physical features and build, and if the photo of the accused does not stand out. (*People v. Holt* 1972) 28 Cal.App.3d 343, 349, disapproved on other grounds in *Evans v. Superior Court* (1974) 11 Cal.3d 617, 625, fn. 6.)

The photographic lineup in this case was unduly suggestive. The trial court focused on the apparent lack of bad motive by the police in determining whether the photographic lineup was suggestive. Mr. Cruz did not report anything to the police about either of the robbers having misaligned eyes. Because Mr. Cruz did not mention this fact to the police prior to viewing the photographs, the trial court concluded the police had no reason to believe such a factor was a concern in setting up the photographic lineup. (3 RT pp. 918-919.) The motive of the police in setting up the photographic lineup is not part of the two-part test for determining if a photographic lineup is impermissibly suggestive. The test is objective.

Court Exhibit A was the photographic lineup in question. Appellant was in the number three position. Appellant's misaligned eyes clearly make him stand out. The misalignment is easily noticeable and cannot be attributed to any external factors such as a tilted head. In *People v. Carlos* (2006) 138 Cal.App.4th 907, review denied, the defendant was convicted of the robbery of a donut shop. The victims were shown a photographic lineup which included the defendant. The defendant's photograph was the only photograph to include identification information and an identification number. Division One of this Court concluded, "The problem with the six-pack is obvious–it is just not that Carlos's name and

34

an identification number are printed on the front of the form, it is that they are printed directly below his picture. The prosecutor's representation that all six-packs are similarly labeled may be correct, but whether by chance or design the problem here is that the suspect's photograph is directly above the name and number. Although the name placement is not quite pointing an arrow to Carlos, it is plainly suggestive." (*People v. Carlos, supra,* 138 Cal.App.4th at p. 876.)

Similar reasoning applies to the instant case. Appellant's misaligned eyes were tantamount to an arrow pointing at him. *People v. Carlos* correctly noted that it was not important whether the suggestive nature of the lineup resulted from chance or design. The fact that Mr. Cruz noticed the misaligned eyes of the robber when the robbery occurred, (3 RT p. 911), and appellant's photographic in the photographic lineup was the only photograph containing this feature, made the photographic lineup suggestive.  Mr. Cruz naturally gravitated towards the photograph in the photographic lineup that contained an individual with an unique physical characteristic possessed by the robber.  "[A]n array that includes a photograph that contains a unique feature that directly relates to an important identification factor may be impermissibly suggestive." (*People v. Borghesi* (Colo. S.Ct. 2003) 66 P.3d 93, 104.) The misaligned eyes of the robber was an important identification factor.  The photographic lineup was suggestive regardless of whether the police officer who prepared it acted with or without good will. The trial court erred by reaching a contrary conclusion.

The next issue is whether Mr. Cruz's identification was reliable under the totality of the circumstances.  His identification was not reliable. Appellant is African-American. Mr.

35

Cruz was Hispanic. Cross-racial identifications are known to be less reliable than identifications made by members of the same race. (*People v. Ramirez* (2006) 39 Cal.4th 398, 417.) Mr. Cruz also saw the robber with a gun, and weapon focus also reduces the reliability of eyewitness identification. (*People v. Earle* (2009) 172 Cal.App.4th 372, 406; *People v. Ramirez, supra*, 39 Cal.4th at p. 417.) Mr. Cruz admitted that he was so focused on the gun that he was unable to see the second robber on the passenger side of the truck. (4 RT p. 1223.) Mr. Cruz had a very limited opportunity to view the robbers. The incident happened at night in a matter of seconds. Mr. Cruz admitted that he needed to wear glasses, but did not. Mr. Cruz's last eye checkup was 10 years before the incident and he was prescribed glasses at that time. (3 RT pp. 954-955.) Mr. Cruz claimed to have noticed the misalignment of one of the robber's eyes at the time of the robbery, but did not say anything to the police about that characteristic when he was initially questioned. (4 RT pp. 1203-1204, 1206.) Mr. Cruz's description of the hair of the robber with the gun was different from how appellant's hair appeared in court. Appellant had a closed cropped hair cut in court. (4 RT p. 961.) The robber had long and curly hair. (4 RT p. 960.)

The law has long recognized the unreliability of identifications made under the circumstances of Mr. Cruz's identification of appellant as the robber with the gun:

> The unreliability of eyewitness identification is well established: The United States Supreme Court has recognized that "the vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." (*United States v. Wade* (1967) 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149.) The court noted "the high incidence of miscarriage of justice" caused by such

36

mistaken identifications, and warned that "the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his susceptibility to suggestion the greatest." (*Id.* at pp. 228, 229, 87 S.Ct. at p. 1933.)

(*People v. McDonald* (1984) 37 Cal.3d 351, 363.) For the reasons above, Mr. Cruz's identification of appellant as one of the robbers was not reliable under all the facts and circumstances. Because the photographic lineup was suggestive and Mr. Cruz's identification of appellant as the robber was not reliable, the trial court erred by denying the defense motion to exclude the identification.

An identification made with a suggestive photographic lineup violates a defendant's right to federal due process of law. (*Stovall v. Denno, supra,* 388 U.S. at pp. 301-302.) The judgment must be reversed unless the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705.) The denial of appellant's motion to exclude Mr. Cruz's identification was not harmless beyond a reasonable doubt. Mr. Cruz was the victim and closest to the robbers. The jury most likely viewed his identification as conclusive evidence of the identity of the robber despite the suggestive nature of the photographic lineup. Laquita Steel denied seeing anything when she testified. (4 RT pp. 1266-1270.)

Jennifer Edwards testified that appellant was the robber with the gun. (4 RT pp. 1299-1300.) Ms. Edwards was not a credible witness. She gave conflicting statements about knowing appellant. Ms. Edwards testified that she had not seen appellant prior to the robbery. (4 RT p. 1310.) Assuming this was true, she was identifying appellant based on a stressful

37

incident that lasted a very brief period of time.   As the above authorities recognized, identifications made under those circumstances tend to be unreliable. After Ms. Edwards' recollection was refreshed with the police report, she then testified that she had seen appellant in the neighborhood before the robbery occurred. (4 RT p. 1321-1322.) She admitted that she could only see a profile of the person she believed was appellant and that it was to dark to see details. (4 RT p. 1321.) Ms. Edwards testified she saw a gun and then contradicted herself and said she did not see a gun. (4 RT pp. 1304, 1516.)

The jury could not have viewed Ms. Edwards as a credible witness. If the trial court had excluded Mr. Cruz's identification of appellant as one of the robbers, there would have been meager evidence connecting appellant to the robbery. Appellant was interviewed by Detective Moreno and denied committing the robbery. (4 RT p. 1806.) The trial court's denial of appellant's motion to exclude Mr. Cruz's identification of appellant as one of the robbers was not harmless beyond a reasonable doubt.

For the reasons above, review should be granted of this issue.

V

**REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER THE FEDERAL DUE PROCESS CLAUSE REQUIRES REVERSAL OF THE JUDGMENT OF GUILT BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO BIFURCATE THE GANG ALLEGATIONS**

Prior to the commencement of trial testimony, counsel for co-defendant Windom moved to bifurcate the gang allegations. Appellant joined in that motion. (Aug. RT p. 5.) The defense counsel argued the gang evidence was prejudicial and there was no evidence appellant was a member of the gang which the prosecution claimed was responsible for the crime. (Aug. RT p. 6.) The trial court stated it was going to deny the motion if one of the two robbers was a self-admitted gang member. (Aug. RT p. 7.) Counsel for co-defendant Windom argued the bifurcation motion should be granted because: (1) the victim did not say anything about gangs when he testified at the preliminary hearing; (2) the only evidence establishing the robbery was gang related was the testimony of the prosecution gang expert. (*Ibid.*) Appellant was arrested shortly after the incident, and the police connected the case to a gang only when co-defendant Windom was arrested several days later. (Aug. RT pp. 7-8.) The trial court denied the motion because it believed the gang allegation was relevant to the robbery charge. (Aug. RT p. 8.)

The trial court abused its discretion by denying the motion to bifurcate the gang allegations. There was little to no evidence the crime was gang related. It appeared to be a simple street robbery. The admission of the gang evidence was prejudicial. It made the jury

39

likely to convict appellant simply because he was a gang member. Hence, the judgment of guilt must be reversed.

Gang evidence should not be admitted where its sole relevance it to show a defendant's criminal disposition or bad character as a means of creating an inference the defendant committed the charged offense. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 223.) Gang evidence may be relevant to establish a defendant's motive, intent or some fact concerning the charged offenses other than criminal propensity as long as the probative value of the evidence outweighs its prejudicial effect. (*People v. Albarran, supra,* 149 Cal.App.4th at p. 223.)

The trial court had the discretion to bifurcate gang allegations in order to mitigate the prejudice to the defendant from the admission of that evidence. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) *People v. Hernandez* set forth the forth the following standard for the trial court's guidance:

> In cases *not* involving the gang enhancement, we have held that evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal. (Citation omitted.) But evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation-including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like-can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. (Citations omitted.) To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary. (Citation omitted.)

(*People v. Hernandez, supra*, 33 Cal.4th at pp. 1049-1050.)

The trial court's discretion to deny bifurcation of a charged gang enhancement is broader than its discretion to admit gang evidence when the gang enhancement is not charged. (*Id.*, at p. 1050.) The Supreme Court concluded the trial court did not abuse its discretion by denying the defendant's bifurcation motion because much of the gang evidence was relevant to the charged offense. (*Ibid.*)

The trial court abused its discretion by denying appellant's bifurcation motion. The Supreme Court in *People v. Hernandez* concluded the trial court did not abuse its discretion by denying the defendant's bifurcation motion because the gang evidence was relevant to the charged offense. Similar reasoning does not apply to the instant case.

There was no evidence establishing the robbery of Mr. Cruz was gang related. The determination of whether the trial court abused its discretion by denying the bifurcation motion must be made based on the offers of proof and evidence before the trial court at the time it made its ruling. The defense counsel pointed out that appellant was not a member of the gang which the prosecution claimed committed the crime. (Aug. RT. p. 6.) He also noted that the victim did not say anything about gang when he testified at the preliminary hearing. (Aug. RT p. 7.) The prosecution did not argue the defendants uttered gang slogans, displayed gang signs during the robbery, or displayed gang tattoos to Mr. Cruz. The prosecutor stated that appellant was found in the gang's territory immediately after the crime was committed and had been seen "hanging out in that area." (Aug. RT. p. 6.) This was hardly sufficient to establish a gang connection between appellant and the robbery.

41

The trial court believed the self-admission of one of the two defendants that he was a gang member was sufficient to deny the bifurcation motion. (Aug. RT p. 7.) This reasoning was erroneous. The status of one of the defendants as a gang member did not by itself establish a gang connection to the robbery. There had to be facts concerning the robbery itself that tied it to a gang. That evidence was lacking at the time the trial court denied the bifurcation motion. Hence, the trial court abused its discretion by denying the bifurcation motion.

There was also evidence lacking at trial that the robbery was gang related. Even if the trial court's denial of the motion to bifurcate was correct at the time it made the ruling, the judgment can still be reversed if the defendant shows that the denial of the motion resulted in gross unfairness and a denial of due process. (*People v. Albarran, supra*, 149 Cal.App.4th at p. 231, fn. 17.)   Detective Reyes's opinion that the robbery was gang related was based on nothing more than the defendants' status as gang members. His opinion that the robbery was gang related was mere speculation. There was not a single fact about the robbery itself establishing that it was gang related. Every street crime committed by a gang member is not done for the benefit of the gang. As explained below, the admission of the gang evidence denied appellant a fair trial. The evidence at trial thus established that the trial court's denial of the bifurcation motion was error.

The admission of evidence which renders a trial fundamentally unfair violates due process of law. (*People v. Albarran, supra*, 149 Cal.App.4th at p. 229; *Estelle v. McGuire* (1991) 502 U.S. 62, 70, 112 S.Ct. 475, 116 L.Ed.2d 385.)The admission of the gang evidence

42

denied appellant a fundamentally fair trial. *People v. Albarran* concluded the admission of the gang evidence deprived the defendant of due process and a fair trial because the gang evidence had no relevance, was "extremely and uniquely inflammatory," and created the danger the jury would infer the defendant had a propensity to commit the charged offenses. (*People v. Albarran, supra,* 149 Cal.App.4th 230.)

Similar reasoning applies to the instant case. The jury should have determined appellant's guilt of the robbery without hearing any gang evidence. Instead, the jury heard the typical parade of horrible details about appellant's gang membership and the crimes committed by members of his gang. Detective Reyes testified that the primary activities of the Colden Avenue Boys was selling drug, narcotics sales, street robberies, and drive-by shootings. (4 RT p. 1844.) The jury also heard about the felony convictions of members of the Eastside Hustler's Crips gang. (4 RT pp. 1853-1855.) Appellant was allegedly associating with members of that gang because he committed the robbery with co-defendant Windom. The identification of appellant as the robber was not reliable. Mr. Cruz made a cross-racial identification during a stressful event with a weapon present. Such circumstances were inherently likely to produce an unreliable identification. (*People v. McDonald, supra,* 37 Cal.3d at p. 363.) Jennifer Roberts was not a credible witness because of her numerous conflicting statements. (4 RT pp. 1304, 1310, 1321-1322; 4 RT pp. 1516-1517.) Ms. Steel denied seeing anything when she testified. (4 RT pp. 1266-1270.) Most jurors are ready to find gang members guilty of crimes merely because they belong to a group of individuals who are a menace to society. The bifurcation of the gang allegations was the only way to

43

insure appellant had a fair trial.

For the reasons above, review should be granted of this issue.

## VI

**REVIEW SHOULD BE GRANTED TO DETERMINE WHETHER APPELLANT'S RIGHT TO FEDERAL DUE PROCESS OF LAW, AND SIXTH AMENDMENT TIGHT TO TRIAL BY FAIR AND IMPARTIAL JURORS, WERE VIOLATED WHEN THE TRIAL COURT FAILED TO CONDUCT AN INQUIRY TO DETERMINE IF JUROR MISCONDUCT OCCURRED AFTER THE JURORS SENT A NOTE REQUESTING TO BE ESCORTED FROM THE COURTHOUSE FOLLOWING THE RETURN OF THE VERDICTS; ALTERNATIVELY, WHETHER THE TRIAL COURT VIOLATED APPELLANT'S AFOREMENTIONED CONSTITUTIONAL RIGHTS BY DENYING HIS MOTION FOR A NEW TRIAL**

The verdicts were read on November 10, 2008. The jury sent the following note prior to the verdict being read:

> Following any verdict can we request escort to jury room and parking structure.
>
> Family and friends of the defendants have been in court and have used same elevator and parking areas. And this was a trial involving gang members.

(2 CT p. 204.) After the trial judge informed the attorneys of this note, he stated he had noticed a group of young African-American males in the back of the courtroom during the trial who were dressed in dark shirts or dark T-shirts. (5 RT pp. 2701-2702.) The defense attorneys requested the trial court to individually question the jurors. (5 RT p. 2702.) The prosecutor opposed the request because it was a public trial and the defense attorneys had earlier opposed a request to exclude co-defendant Windom's gang associates from the courtroom. (5 RT p. 2703.)

45

The prosecutor argued that the presence of gang members during the trial was likely to influence the jury in favor of the defense rather than the prosecution. (*Ibid.*) Appellant's counsel argued that the jurors during voir-dire had stated that they did not have a problem being a juror in a case involving gang allegations, and "now we get a note the very next day the individuals show up that they want an escort especially because this is a gang case. We all know what that means. They are afraid. They are afraid. And the only thing that could have caused that fear are these four to five males coming to court dressed up in gang clothing white shirts and black pants as described by the victim. That the only factor that court can see that caused this fear." (5 RT p. 2704.) The attorney for co-defendant Windom stated that, "I don't see the prejudice that it would cause the People just to simply ask the jurors if they've been affected in any negative way or otherwise what harm would it do." (5 RT p. 2705.)

The trial court stated that it was required to question the jurors and cited *People v. Hamilton* (1999) 20 Cal.4th 273. (5 RT pp. 2706-2707.) The defense counsel argued *People v. Hamilton* should not be relied upon by the trial court because it was a capital case and the "gang allegation is so prejudicial and so persuasive in the minds of the public that it just infects the trial. Just infects it." (5 RT p. 2708.) The prosecutor continued to oppose questioning of the jurors. (5 RT pp. 2708-2709.) The trial court stated that it was not going to question the jurors. (5 RT p. 2710.) The verdicts were then read in open court. (5 RT pp. 2710-2715.)

Appellant filed a motion for a new trial. (2 CT pp. 264-279.) It argued that a new trial should be granted because: (1) juror misconduct occurred; (2) spectator misconduct occurred;

46

and (3) the trial court erred by failing to conduct an inquiry of the jurors after the jury sent the note requesting an escort from the courthouse. (2 CT pp. 267-277.) The motion was supported by a declaration from appellant's mother. Her declaration stated that gang members entered the courtroom during the day of closing arguments and engaged in intimidating glaring at the jurors. (2 CT p. 278.) The declaration also stated that one juror in particular appeared very concerned and worried about the presence of the gang members. (2 CT p. 278, ¶5.) The prosecution filed an opposition to the motion for a new trial. (2 CT pp. 284-295.)

Appellant's mother testified during the hearing on the motion for a new trial. (5 RT pp. 3001-3013.) She saw five African-American males and an African-American female enter the courtroom enter the courtroom the day of closing arguments. (5 RT pp. 3004-3005, 3010.) Two of the males were "mad-dogging" the jurors. (5 RT p. 3005.) Two males also had a tattoo which said, "hustler," on the side of their necks. (*Ibid.*) That term was associated with co-defendant Windom's gang. (5 RT p. 3006.) A juror kept shifting her eyes towards the audience members with a leery appearance. (5 RT pp. 3007, 3011.) The individuals whispered to each other and stared down the jurors. (5 RT p. 3009.) Several of the individuals from the courtroom got on the elevator with jurors. They stared down the jurors. (5 RT p. 3012.)

The prosecutor argued there was no evidence the individuals in the courtroom were gang members. (5 RT p. 3014.) He also argued there was no proof the jury had been influenced to convict the defendants because of this alleged conduct. (5 RT p. 3015.)

47

Appellant's attorney argued the trial court had the opportunity to question the jurors and declined the defense attorneys' request. (5 RT p. 3015.) Appellant's attorney also noted that the reference in the jury's letter to the defendants' friends could only have been to the individuals in the audience. (5 RT p. 3016.) The trial court denied the motion for a new trial because: (1) it was a common occurrence in the courthouse for jurors to request escorts out of the building; (2) the trial court's failure to conduct an inquiry in response to the note suggested there had not been interruption of the deliberation process; (3) the response to the jury's note was within the discretion of the trial court and that discretion had not been abused; and (4) there was no evidence the jurors had been improperly influenced. (5 RT pp. 3021-3023.)

A defendant in a criminal case has a right under both the federal and state constitution to have the charges against him determined by a fair and impartial jury. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 16; *People v. Nesler* (1997) 16 Cal.4th 561, 578.) "Because a defendant charged with a crime has a right to the unanimous verdict of 12 impartial jurors [citation] it is settled that a conviction cannot stand if even a single juror has been improperly influenced." (*People v. Nesler, supra,* 16 Cal.4th at p. 578.)

Penal Code section 1089 provides in relevant part:

> If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations

48

as though the alternate juror had been selected as one of the original jurors.

Section 1089 requires a hearing is required whenever a court is put on notice that juror misconduct may have occurred. (*People v. Burgener* (1985) 41 Cal.3d 505, 520, *People v. Chavez* (1991) 231 Cal.App.3d 1471, 1485.)

Penal Code section 1120 provides:

> If a juror has any personal knowledge respecting a fact in controversy in a cause, he must declare the same in open court during the trial. If, during the retirement of the jury, a juror declare a fact which could be evidence in the cause, as of his own knowledge, the jury must return into court. In either of these cases, the juror making the statement must be sworn as a witness and examined in the presence of the parties in order that the court may determine whether good cause exists for his discharge as a juror.

Once a court has been put on notice of the possibility that a juror has been exposed to improper or external influences, "it is the court's duty to make whatever inquiry is reasonably necessary to determine if the juror should be discharged and failure to make this inquiry must be regarded as error." (*People v. Burgener* (1985) 41 Cal.3d 505, 520, overruled on other grounds in *People v. Reyes* (1998) 19 Cal.4th 743, 753-754 The decision to investigate the possibility of juror bias, incompetence, or misconduct is within the discretion of the trial court. (*People v. Cleveland* (2001) 25 Cal.4th 466, 478.)

In *People v. McNeal* (1979) 90 Cal.App.3d 830, the trial court received a note from the jury foreperson on the first day of deliberations. The note stated one of the jurors had personal knowledge about the facts of the case. The defense counsel requested a hearing

49

pursuant to section 1120. The trial court questioned the juror, but refused to discuss with the juror the facts. The juror assured the trial court she could disregard outside evidence. She continued to participate in jury deliberations. The Court of Appeal reversed the judgment because the trial court had failed to conduct an adequate inquiry. (*People v. McNeal, supra,* 90 Cal.App.3d at p. 838.)

Similar reasoning applies to the instant case. The trial court had reason to believe the jurors feared retaliation because of their verdict. The note from the jury clearly expressed that concern. Neither of the defendants had done anything during the trial to warrant the jurors' concerns. The note from the jury established that they were intimidated by the presence of individuals they had seen in the courtroom, hallway, and elevator. The note on its face established a strong likelihood that the jurors deliberation process had been influenced by events other than testimony received in court and subject to cross-examination. Menacing glares by spectators in the courtroom, hallway, or elevator are not events subject to cross-examination. The defense counsel was unable to determine how such events influenced jurors' attitudes towards the case unless the trial court questioned the jurors. The trial court had a duty of inquiry to determine if this jury could be fair. The trial court's failure to conduct a hearing when requested by the defense counsel was reversible error.

The trial court's failure to question the jury violated appellant's right to due process of law and Sixth and Fourteenth Amendments right to a jury trial. Both the Sixth Amendment and the due process clause guarantee a criminal defendant the right to trial by a fair jury. (*Irvin v. Dowd* (1961) 366 U.S. 717, 721, 81 S.Ct. 1639, 6 L.Ed.2d 751; *Ristaino v. Ross*

50

(1976) 424 U.S. 589, 595, fn. 6, 96 S.Ct. 1017, 47 L.Ed.2d 258.) "The right to an impartial jury carries with it the concomitant right to take reasonable steps designed to insure the jury is impartial." (*Ham v. South Carolina* (1973) 409 U.S. 524, 532, 93 S.Ct. 848, 35 L.Ed.2d 46 [J. Marshall concurring in part and dissenting in part].) "[A] suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried." (*Conners v. United States* (1895) 158 U.S. 408, 413, 15 S.Ct. 951, 39 L.Ed. 1033.) In *Ham v. South Carolina*, the Supreme Court found reversible error because the trial court refused the defense counsel's timely request to voir-dire the jury on the topic of racial prejudice. The Court concluded the trial court's refusal to conduct the requested voir-dire violated the defendant's right to federal due process of law. (*Ham v. South Carolina, supra,* 409 U.S. at p. 527.)

In the instant case, the trial court should have known this jury was not fair and impartial based on its note requesting an escort out of the courthouse. The defense counsel made a timely request to voir-dire the jury once its fear became evident. In *Ham v. South Carolina,* the source of bias the trial court failed to explore, and which required reversal, was racial prejudice. The source of the jury's bias at the time it sent the note requesting an escort was fear of gang members the jury associated with the co-defendant Windom and appellant. The trial court had the same duty of inquiry as the trial judge did in *Ham v. South Carolina.* Similar to the trial judge's duty in *Ham v. South Carolina* to make sure racial bias did not infect the jury, the trial judge in this case had a duty to make sure a fear of gang members did

51

not impact the jury's deliberation process. Reversal is required because the trial court refused the defense request to make this inquiry. (*Ham v. South Carolina, supra,* 409 U.S. 529 [finding the trial court's failure to voir-dire the jury about racial bias reversible without any inquiry into actual prejudice].)

The Sixth Amendment and the due process clause guarantee a criminal defendant the right to trial by a fair jury. (*Irvin v. Dowd, supra,* 366 U.S. at p. 721; *Ristaino v. Ross, supra,* 424 U.S. at p. 595, fn. 6.)  These constitutional guarantees of a fair trial require reversal of appellant's conviction because the jury's note requesting an escort from the courthouse established that appellant was not tried by a fair jury.  A defendant has the right to be tried by an impartial jury. "Impartiality is not a technical concept. It is a state of mind.  For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." (*United States v. Wood* (1936) 299 U.S. 123, 145-146, 57 S.Ct. 177, 81 L.Ed. 78.) The jury is not required to be totally ignorant of the facts and issues but "it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (*Irvin v. Dowd, supra,* 366 U.S. at pp. 722-723.)

Under California law, a verdict should be reversed if a juror's partiality would have constituted grounds for a challenge for cause during jury selection. (*People v. Nesler, supra,* 16 Cal.4th at p. 581.) A juror's concealment of actual bias is also grounds to reverse a conviction. (*Ibid.*) "Actual bias" is "the existence of a state of mind on the part of the juror in reference to the case, or to any of the parties, which will prevent the juror from acting with

entire impartiality and without prejudice to the substantial rights of any party." (*Ibid*, quoting Code Civ. Proc. §225, subd. (b)(1)(C).) A sitting juror's actual bias that would have supported a challenge for cause renders the juror incapable of performing his or her duties and thus subject to discharge. (*Ibid*.)

This jury was incapable of rendering a fair and impartial verdict under both the state and federal constitutional standards. The jury must have imputed to co-defendant Windom and appellant the fear they felt because of the presence of the alleged gang members in the courthouse. A juror who stated during jury voir-dire that he or she feared the defendant or his associates to the point of requiring an escort from the courthouse most likely would have been disqualified from sitting as a juror. Such jurors were not impartial within the meaning of *United States v. Wood.*

The trial court denied the motion for a new trial because it concluded juror misconduct had not occurred and because jurors commonly requested an escort from the courthouse. (5 RT pp. 3021-3022.) A trial court commits error by denying a defense motion for a new trial when the evidence establishes prejudicial jury misconduct has occurred. (*People v. Nesler* (1997) 16 Cal.4th 561, 590.) Because the evidence established the jury committed misconduct and was biased against appellant, the trial court erred by denying the defense motion for a new trial.

This jury was actually biased against appellant. The jurors obviously associated the gang members in the courtroom who were engaging in intimidating conduct with appellant. This fear must have caused the jury to want to put appellant away. There was a strong

53

likelihood the jurors wanted to convict appellant because of the misconduct of individuals whom the jury inevitably associated with appellant. Appellant did not have the opportunity to make sure this fear had not infected the deliberation process. Appellant's right to an unbiased and impartial jury under both state and federal law was violated and his conviction should be reversed.

For the reasons above, review should be granted of this issue.

Dated: 8/09/10

John L. Staley

## DECLARATION REGARDING WORD COUNT

I declare under penalty of perjury that this petition contains 14,008 words.

John L. Staley

PROOF OF SERVICE
(People v. Fisher, Case No. B215305)

I reside in the county of SAN DIEGO, State of California. I am over the age of 18 and not a party to the within action; My business address is 11770 Bernardo Plaza Court, Suite 305, San Diego, CA 92128.   On August 9, 2010, I served the foregoing documents described as: APPELLANT'S PETITION FOR  REVIEW on all parties to this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Clerk's Office
California Supreme Court
350 McAllister St.
San Francisco CA 94102-3600

Court of Appeals
Second Appellate District
300 S. Spring St.
Second Floor, Room 2217
Los Angeles, CA 90013
(Courtesy Copy)

Office of the Attorney General
300 S. Spring St.
Fifth Floor
Los Angeles, CA 90013

California Appellate Project
520 S. Grand Ave., 4th Floor
Los Angeles, CA 90071-2928
(Mailed to CAP on August 2, 2010)

Ronald Fisher
F-24258
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Superior Court Clerk
200 W. Compton Blvd.
Compton, CA 90220

Dale Atherton, Esq.

140 W. Foothill Blvd
Suite B
Claremont, CA 91711

Office of the District Attorney
200 W. Compton Blvd
Compton, CA 90220

I caused the above document to be served on the above list via United States mail, first class postage prepaid. Executed on August 9, 2010, at San Diego, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

John L. Staley

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>RONALD FISHER,<br><br>　　　　Defendant and Appellant. | B215305<br><br>(Los Angeles County<br>Super. Ct. No. TA093749)<br><br>COURT OF APPEAL - SECOND DIST.<br>**F I L E D**<br>JUL 22 2010<br>JOSEPH A. LANE　　　　Clerk<br><br>_____<br>Deputy Clerk |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jerry E. Johnson, Judge. Modified and, as so modified, affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Linda C. Johnson and Michael A. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Ronald Fisher appeals from the judgment entered following a jury trial that resulted in his conviction for second degree robbery with use of a firearm. Fisher was sentenced to a prison term of 45 years to life.

Fisher contends: (1) the evidence was insufficient to establish the Penal Code section 186.22[1] gang enhancement; (2) the trial court committed instructional error in regard to the gang enhancement; (3) his motion to bifurcate the gang allegations was improperly denied; (4) identification evidence should have been suppressed because a pretrial photographic lineup was unduly suggestive; (5) the evidence was insufficient to establish the great bodily injury allegation; (6) the trial court erred by refusing to instruct on the defense of accident; (7) the trial court erred by failing to conduct a hearing into purported juror misconduct and by denying Fisher's new trial motion; and (8) the one-year section 667.5, subdivision (b) enhancement must be stricken. We order the one-year enhancement stricken. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

a. *The robbery.*

On November 4, 2007, at approximately 10:15 p.m., Jose Cruz was pulling his pickup truck into his Los Angeles apartment's parking lot. Fisher and co-defendant Solomon Windom approached Cruz's truck. Fisher was holding a small, chrome-plated pistol. Cruz put his truck in reverse and attempted to drive away, but was unable to exit the driveway. When Cruz stopped the truck, Fisher placed the gun to Cruz's head and ordered Cruz to "give him the money" or he would kill him. Fisher was approximately two feet away from Cruz. Cruz pushed the gun away, fearing that Fisher was about to shoot. Fisher shot Cruz in the right forearm. Cruz said, " 'Wait. Wait. I have the money.' " Cruz gave Fisher his wallet. Fisher gave the wallet to Windom and told him

---

[1]   All further undesignated statutory references are to the Penal Code.

to check it. Windom confirmed, " 'Yes, the money's here.' " Fisher said, " 'Let's go,' " and the duo ran from the scene. The police were summoned.

Cruz identified Fisher in a pretrial photographic lineup, as well as at trial. Laquita Steele, who was at Cruz's apartment building at the time of the robbery, described the incident to police and identified Windom as the man who took the money.[2] Jenifer Edwards, a resident in the apartment complex, heard the front gate slam, looked out her window, and observed Windom. Shortly thereafter, she observed Fisher holding a gun. She then heard a gunshot and saw a flash, and saw Windom take Cruz's wallet. Edwards identified Fisher as the shooter and Windom as the second man at trial and in a pretrial photographic lineup.

b. *Gang evidence.*

The parties stipulated that Fisher was a member of the Colden Avenue Boys, a criminal street gang within the meaning of section 186.22, subdivision (b). Officers Jose Reyes and Melvin Hernandez testified as gang experts, as follows. The Colden Avenue Boys gang had eight members and a distinctive hand sign, and was affiliated with the Crips. The gang's primary activities were robberies, narcotic sales, drive-by shootings, and the possession of illegal weapons. Fisher had a tattoo indicating his gang allegiance. Fisher's gang moniker was "Ron Ron."

The parties also stipulated that Windom was a member of Young Hustlers, a sub clique of the Eastside Hustlers, a criminal street gang within the meaning of section 186.22, subdivision (b). One of the gang's primary activities was the commission of robberies. The gang was affiliated with the Crips. The Eastside Hustlers had approximately 60 members, and the Young Hustlers sub clique had approximately 10 members.

---

2    At trial, Steele admitted identifying someone in the photographic lineup. However, she did not recall identifying Windom, did not recall the shooting, and did not recall telling officers anything about it.

3

The Cruz robbery occurred in territory claimed by the Eastside Hustlers gang. The Eastside Hustlers and the Colden Avenue Boys had become allies and their members had been seen and identified together. Because the Colden Avenue Boys had only eight members, they had formed an alliance with the Eastside Hustlers to protect themselves against a common rival, the Main Street Crips. Typically, gang members increase their status within the gang by committing crimes, such as robberies or drive-by shootings.

When given a hypothetical based upon the evidence and the prosecution's theory of the case, Reyes opined that the robbery was committed for the benefit of the Colden Avenue Boys. He explained that by virtue of the robbery, the gang member from the smaller gang "is either trying to get initiated into the bigger gang[,] trying to impress the bigger gang and definitely benefiting his smaller gang by proving that he can put in work, street vernacular meaning you're going to go out, commit crimes. You're not afraid to pull the trigger, [not] afraid to beat somebody down." Further, the member of the smaller gang "is definitely benefiting his gang by gaining the respect as well as the alliance of the bigger gang." A shooting like the one in the instant case "sends out a message" and intimidates the community, letting them know that "[i]t's no longer safe to come home at night." Finally, carrying a gun increases a gang member's status within the gang. Reyes explained: "If you are carrying the firearm, you're somebody in the gang. Not just anybody gets to carry a gun in a gang." Reyes also opined that the charged robbery was committed in association with another gang member.

2. *Procedure.*

Trial was by jury. Fisher was convicted of second degree robbery (§ 211). The jury further found Fisher personally used, and personally and intentionally discharged, a handgun during commission of the offense, proximately causing great bodily injury to Cruz (§ 12022.53, subds. (b), (c), (d)); that a principal was armed during commission of the offense (§ 12022, subd. (a)(1)); and Fisher committed the offense for the benefit of, at the direction of, or in association with, a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members (§§ 186.22, subd. (b) & 12022.53, subd. (e)). Fisher admitted suffering one serious or violent felony (§§ 667,

4

subds. (a)(1), (b)-(i) & 1170.12, subds. (a)-(d)) and serving a prior prison term within the meaning of section 667.5, subdivision (b). The trial court denied Fisher's motion for a new trial, brought on the ground of juror misconduct. It sentenced Fisher to a prison term of 45 years to life. It imposed a restitution fine, a suspended parole restitution fine, a court security assessment, and a criminal conviction assessment. Fisher appeals.

DISCUSSION

1. *Issues related to the criminal street gang enhancement.*

Fisher makes several contentions aimed at reversal of the criminal street gang enhancement, including that (1) the evidence was insufficient to prove he committed the crime to benefit a criminal street gang; (2) the evidence was insufficient to show he committed the crime with the intent to promote other criminal activity by gang members; and (3) the trial court misinstructed the jury on the gang enhancement. He also contends that the trial court erred by denying the defense motion to bifurcate the trial of the gang enhancement, an error he asserts requires reversal of his conviction as well as the enhancements. We address these contentions seriatim.

a. *The evidence was sufficient to support the criminal street gang enhancement.*

(i) *Standard of review.*

When determining whether the evidence was sufficient to sustain a criminal conviction, we review the entire record in the light most favorable to the judgment to determine " 'whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496; *People v. Carrington* (2009) 47 Cal.4th 145, 186-187.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Reversal for insufficient evidence is not warranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Zamudio* (2008) 43 Cal.4th 327, 357.) " 'Although it is the jury's duty to

5

acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]' [Citation.]" (*People v. Zamudio, supra,* at pp. 357-358; *People v. Kraft, supra,* at pp. 1053-1054.)

(ii) *The evidence was sufficient to prove the crime was committed in association with a criminal street gang.*

Section 186.22, subdivision (b)(1) provides in pertinent part: "[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" shall be subject to additional punishment as further defined in section 186.22, subdivision (b). (§ 186.22, subd. (b)(1); see also *People v. Gardeley* (1996) 14 Cal.4th 605, 617; *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329; *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322.) Not all crimes committed by gang members fall within the ambit of section 186.22, subdivision (b), however. (See *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661-663 & fn. 7; *People v. Ramon* (2009) 175 Cal.App.4th 843, 853; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1195.)

It is well settled that a trier of fact may rely on expert testimony about gang culture and habits to reach a finding on a gang allegation. (*In re Frank S., supra,* 141 Cal.App.4th at p. 1196; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930.) However, a gang expert's testimony alone is insufficient to find an offense gang related. (*People v. Ochoa, supra,* 179 Cal.App.4th at p. 657; *People v. Ferraez, supra,* at p. 931.) " '[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang.' [Citation.]" (*People v. Ochoa, supra,* at p. 657; *People v. Martinez* (2004) 116 Cal.App.4th 753, 762.)

6

Here, it is questionable whether the evidence was sufficient to prove the robbery was committed *for the benefit of* a criminal street gang. It is true that the crime occurred in gang territory, Fisher and Windom were gang members, and robbery was one of the primary activities of both the Colden Avenue Boys and the Eastside Hustlers. However, nothing about the crime itself suggested it was committed for the benefit of a criminal street gang. Neither robber referenced the gang, threw gang signs, or issued gang challenges. Neither robber was dressed in gang attire. The crime was not committed against a rival gang member. No evidence suggested the money received was to be given to or used by either defendant's gang. There was no evidence Cruz was targeted because either gang had a dispute with him. There was no evidence either robber wished to retaliate against or intimidate Cruz on behalf of the gang. There was no evidence that either defendant bragged about the crime or used it to intimidate residents in the neighborhood. There was no evidence either defendant had gained stature in the gang by virtue of the robbery. (See generally *People v. Ochoa, supra,* 179 Cal.App.4th at p. 662.) Moreover, this was not the type of seemingly random or mindless crime that can be explained only by reference to a gang-related motive; robberies are often committed by non-gang members simply for pecuniary gain.

As noted, the gang expert testified that a member of a smaller gang who commits a crime with a gang member from a larger gang is "either trying to get initiated into the bigger gang [or] trying to impress the bigger gang and definitely benefiting his smaller gang by proving that he can put in work, street vernacular meaning you're going to go out, commit crimes." However, the expert offered no evidentiary support for his supposition. No facts were presented to show this particular robbery was carried out as an initiation, or to cement the alliance between the two gangs. Without evidentiary support, the expert's testimony was purely speculative. "While the [expert] testified that the [crime] could benefit defendant's gang in a number of ways, he had no specific evidentiary support for making such inferences." (*People v. Ochoa, supra,* 179 Cal.App.4th at p. 662.) "An appellate court cannot affirm a conviction based on speculation, conjecture, guesswork, or supposition." (*Id.* at p. 663; *People v. Ramon,*

7

*supra,* 175 Cal.App.4th at p 851.)  Without evidentiary support for his conclusions, the expert merely "informed the jury of how he felt the case should be resolved." (*People v. Ramon, supra,* at p. 851.)  Under similar circumstances, appellate courts have found the evidence insufficient to support a finding a crime benefited a gang.  (See, e.g., *id.* at pp. 851-853; *People v .Ochoa, supra,* at pp. 661-665; *People v. Albarran* (2007) 149 Cal.App.4th 214, 227; *In re Frank S., supra,* 141 Cal.App.4th at pp. 1196-1999.)

However, under section 186.22, subdivision (b), it is not necessary to show the crime was committed *to benefit the gang* if it is shown that the crime was committed *in association with the gang.* (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198; *People v. Martinez, supra,* 158 Cal.App.4th at pp. 1331-1332.) *Morales* is instructive. There, the defendant was convicted of robbery and attempted robbery with gang enhancements.  He committed the crimes with two other gang members. *Morales* rejected the argument that the evidence was insufficient to satisfy section 186.22, subdivision (b). *Morales* explained: "Defendant argues that reliance on evidence that one gang member committed a crime in association with other gang members is 'circular . . . .'  Not so.  Arguably, such evidence alone would be insufficient, even when supported by expert opinion, to show that a crime was committed for the *benefit* of a gang.  The crucial element, however, requires that the crime be committed (1) for the benefit of, (2) at the direction of, *or* (3) in *association* with a gang.  Thus, the typical close case is one in which one gang member, acting alone, commits a crime.  Admittedly, it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang.  Here, however, there was no evidence of this.  Thus, the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." (*People v. Morales, supra,* at p. 1198.)

Here, the evidence was undisputed that Fisher was a member of the Colden Avenue Boys and Windom was a member of the Eastside Hustlers, both criminal street gangs.  Both gangs were affiliated with the Crips, and had become allies, banding together for protection from a common enemy, the Main Street Crips.  The gang expert

8

had spoken to several officers and determined that members of the two gangs had been "stopped and identified together." Moreover, the robbery was committed in the territory of the Eastside Hustlers, and, as noted, robbery was a primary activity of both gangs. There was no evidence suggesting the duo was on a "frolic" unrelated to the gang. Thus, the evidence was sufficient to prove the crime was committed in association with a criminal street gang. (*People v. Morales, supra,* 112 Cal.App.4th at p. 1198; see also *People v. Leon* (2008) 161 Cal.App.4th 149, 163 [where evidence showed the defendant committed crimes "in association with . . . a fellow gang member," there was sufficient evidence defendant "committed the offenses 'in association with any criminal street gang' "]; *People v. Martinez, supra,* 158 Cal.App.4th at p. 1332 ["Defendant, who admitted membership in King Kobras, committed the crimes with Garcia, another admitted member"].)

Fisher argues that the "in association with" language in section 186.22, subdivision (b) "requires something more than simply two gang members committing a crime together." He posits that the phrase suggests there must be a relationship between the individuals that is rooted in their gang affiliation. But even if Fisher's interpretation is correct—a conclusion we do not necessarily accept—such a relationship existed here. As noted, the crime was committed in the territory of the Eastside Hustlers; robbery was a primary activity of both gangs; and the two gangs had become allies to strengthen their gangs. Under these circumstances, the evidence sufficiently demonstrated a relationship rooted in the defendants' gang affiliation. In sum, the evidence was sufficient to establish Fisher committed the robbery in association with a gang.

(iii) *The People were not required to prove that the robbery promoted other criminal activity by gang members.*

Fisher next challenges the sufficiency of the evidence to prove the intent element of the gang enhancement. Relying on *Briceno v. Scribner* (9th Cir. 2009) 555 F.3d 1069 (*Briceno*), and the majority opinion in *Garcia v. Carey* (9th Cir. 2005) 395 F.3d 1099 (*Garcia*), Fisher urges that the intent element was unproven because the crimes were not committed to facilitate criminal acts other than the robbery itself. In his view, evidence is

9

insufficient to prove a gang enhancement unless the People establish the gang members intended to "promote other criminal conduct" by gang members, independent from the underlying crime. We disagree.

In *Garcia*, the defendant gang member robbed the victim in the heart of the gang's territory. (*Garcia, supra,* 395 F.3d at p. 1103.) During the robbery he identified himself by gang and moniker. A divided panel of the Ninth Circuit concluded this evidence was insufficient to support the gang enhancement. (*Ibid.*) *Garcia* explained, "there is no evidence indicating that this robbery was committed with the specific purpose of furthering other gang criminal activity, and there is nothing inherent in the robbery that would indicate that it furthers some other crime." (*Ibid.*) Neither the facts of the crime nor the expert's testimony established "what criminal activity of the gang was furthered or intended to be furthered by the robbery . . . ." (*Ibid.*)

In *Briceno*, two gang members robbed four persons on Christmas day. Following the reasoning in *Garcia, Briceno* concluded the evidence was insufficient to prove the requisite intent to establish the gang enhancement. (*Briceno, supra,* 555 F.3d at p. 1082.) *Briceno* held the specific intent requirement requires some evidence, aside from a gang expert's "generic testimony" and the fact of the defendants' gang membership, supporting an inference the defendant committed the crime " 'with the specific intent to facilitate other criminal conduct by the [gang].' " (*Id.* at p. 1079.) *Briceno* acknowledged that *Garcia* had been rejected by *People v. Hill* (2006) 142 Cal.App.4th 770 and *People v. Romero* (2006) 140 Cal.App.4th 15. However, *Briceno* reasoned that the California Supreme Court has not yet ruled on the issue, and would likely follow the Ninth Circuit's reasoning in *Garcia* rather than the reasoning of the California appellate cases. (*Id.* at pp. 1079-1082.)

*People v. Vazquez* (2009) 178 Cal.App.4th 347, explained why *Briceno* and *Garcia* are not persuasive. *Vazquez* reasoned that section 186.22, subdivision (b) "refers not to '*other* criminal activity,' but to '*any* criminal activity,' a phrase broad enough to encompass the [charged crime] and the many other crimes regularly committed" by the gang's members. (*People v. Vazquez, supra,* at p. 353.) "While our Supreme Court has

10

not yet reached this issue, numerous California Courts of Appeal have rejected the Ninth Circuit's reasoning. As our colleagues noted in *People v. Romero*[, *supra*, 140 Cal.App.4th at p. 19]: 'By its plain language, the statute requires a showing of specific intent to promote, further, or assist in "*any* criminal conduct by gang members," rather than *other* criminal conduct. [Citation.]' Thus, if substantial evidence establishes that the defendant is a gang member who intended to commit the charged felony in association with other gang members, the jury may fairly infer that the defendant also intended for his crime to promote, further or assist criminal conduct by those gang members." (*People v. Vazquez, supra,* at pp. 353-354.) *Vazquez* "reject[ed] the Ninth Circuit's attempt to write additional requirements into the statute. It provides an enhanced penalty where the defendant specifically intends to 'promote, further, or assist in any criminal conduct by gang members.' [Citation.] There is no statutory requirement that this 'criminal conduct by gang members' be distinct from the charged offense, or that the evidence establish specific crimes the defendant intended to assist his fellow gang members in committing." (*Id.* at p. 354.)

Fisher acknowledges that *Briceno* and *Garcia* have not been embraced by California courts, but urges us to adopt their reasoning nonetheless. We decline to do so. *Garcia* and *Briceno,* of course, are not binding on this court. (*People v. Hill, supra,* 142 Cal.App.4th at p. 774 [intermediate federal authority is not binding in matters involving state law].) We find the reasoning of the California appellate courts that have considered the question persuasive, and adopt it here. Because substantial evidence established that Fisher is a gang member, who intended to commit the robbery in association with Windom, an allied gang member, the jury fairly could infer he intended for his crime to promote, further or assist criminal conduct by gang members. (*People v. Vazquez, supra,* 178 Cal.App.4th at pp. 353-355; *People v. Romero, supra,* 140 Cal.App.4th at pp. 19-20; *People v. Hill, supra,* at p. 774 [intent requirement was satisfied by "defendant's own criminal threat," which qualified as the gang-related criminal activity]; see also *People v. Ochoa, supra,* 179 Cal.App.4th at p. 661, fn. 6.) The evidence was sufficient.

b. *The trial court's instruction on the gang enhancement was not erroneous.*

In a related argument, Fisher contends the trial court erred by failing to instruct the jury that, in order to find the gang enhancement true, it had to find Fisher intended his commission of the robbery would promote other criminal conduct by the gang. This omission, he posits, deprived him of his rights to due process and a jury determination of the facts. Fisher's argument is premised on the notion, rejected in the preceding section, that such a finding is an element of the section 186.22, subdivision (b) enhancement. As we have concluded the People are not required to prove the defendant's intent to promote other criminal conduct, we necessarily reject Fisher's claim of instructional error for the reasons set forth *ante*.

c. *The trial court did not abuse its discretion by denying Fisher's motion to bifurcate the gang enhancement.*

Prior to trial, the defendants moved to bifurcate trial of the gang allegations from the substantive charge. The record suggests that a portion of the parties' arguments to the court and discussion of the issue transpired during an unreported conference. On the record, the trial court observed that the People had made an offer of proof that there would be testimony "concerning an attempt to gain admission into whatever gang this involves." The prosecutor clarified: "The evidence that's going to be coming out with respect to the gang expert of this particular gang, is that this is how they operate, this is how they do things. [¶] And through witness testimony, they're going to be testifying . . . that Mr. Fisher was in that gang's territory immediately after this crime was committed, also he's been seen hanging out in that area before with the people that claim that area." The trial court found the gang evidence, though prejudicial, was probative on the issue of motive, and denied the motion.

In *People v. Hernandez* (2004) 33 Cal.4th 1040, our Supreme Court considered the propriety of bifurcating gang allegations. *Hernandez* first compared the issue to the bifurcation of prior conviction allegations. The court observed that because of the "unique prejudice that may ensue" if a jury learns of a defendant's prior convictions, the value of bifurcating trial of those allegations has been recognized by the Legislature and

12

the courts. (*Id.* at pp. 1048-1049.) On the other hand, "the Legislature has given no indication of a similar concern regarding enhancements related to the charged offense, such as a street gang enhancement. Nothing in section 186.22 suggests the street gang enhancement should receive special treatment of the kind given [to] prior convictions." (*People v. Hernandez, supra,* at p. 1049.) *Hernandez* observed that the trial of gang enhancement allegations differs from that of prior conviction allegations. "A prior conviction allegation relates to the defendant's *status* and may have no connection to the charged offense; by contrast, the criminal street gang enhancement is attached to the charged offense and is, by definition, inextricably intertwined with that offense. So less need for bifurcation generally exists with the gang enhancement than with a prior conviction allegation." (*Id.* at p. 1048.)

*Hernandez* clarified: "This is not to say that a court should never bifurcate trial of the gang enhancement from trial of guilt. . . . The predicate offenses offered to establish a 'pattern of criminal gang activity' (§ 186.22, subd. (e)) need not be related to the crime, or even the defendant, and evidence of such offenses may be unduly prejudicial, thus warranting bifurcation. Moreover, some of the other gang evidence, even as it relates to the defendant, may be so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt." (*People v. Hernandez, supra,* 33 Cal.4th at p. 1049.) Where a gang enhancement is *not* at issue, evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal, unless, as is often the case, such evidence is relevant to prove identity, motive, modus operandi, specific intent, and the like. (*Ibid.*) When a gang enhancement *is* charged, a unitary trial is permitted even if some of the expert testimony would not have been admitted at a trial limited to guilt. (*Id.* at p. 1051.) "Even if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself—for example, if some of it might be excluded under Evidence Code section 352 as unduly prejudicial when no gang enhancement is charged—a court may still deny bifurcation." (*People v. Hernandez, supra,* at p. 1050.) *Hernandez* left the decision whether to bifurcate gang enhancement allegations to the trial

13

court's discretion, observing that the trial court's discretion to deny bifurcation is broader than its discretion to admit gang evidence when no gang enhancement is alleged. (*Ibid.*) The burden is on the defendant " 'to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.' " (*Id.* at p. 1051.)

Fisher contends the trial court abused its discretion and violated his due process rights by denying the motion to bifurcate. He argues that the gang evidence in the instant case was highly prejudicial, yet lacked probative value because the robbery could have been proven without evidence relating to his and Windom's gang membership. As discussed *ante,* during commission of the robbery, neither defendant referenced their gangs. Instead, the key issue at trial was the identity of the robbers.

Admittedly, the prosecutor's arguments that the evidence would show "this is how they operate, this is how they do things," and that Fisher was seen in the gang's territory, were not particularly compelling. Evidence that the crime was committed so that Fisher, or the Colden Avenue Boys, could obtain admittance to the Eastside Hustlers gang would have been quite probative on the issue of motive; however, as we have discussed, the gang expert's testimony in this regard amounted to little more than speculation. Nonetheless, while we consider the question to be close, we conclude there was no abuse of discretion and no violation of Fisher's due process rights. Gang enhancements were charged on the crimes, found true by the jury, and supported by substantial evidence. Evidence that Fisher and Windom were members of two gangs that had recently allied was at least somewhat probative on the issue of identity: the evidence explained why these two individuals would commit a crime together, and therefore bolstered the witness identifications. (See generally *People v. Champion* (1995) 9 Cal.4th 879, 922 ["evidence that defendants were members of the same gang as other persons involved in the commission of the crimes in this case fortified the testimony of the persons who identified defendants as participants in the murders"].)

Fisher did not establish any of the gang evidence was so "extraordinarily prejudicial" that it threatened to sway the jury to convict regardless of actual guilt. (*People v. Hernandez, supra,* 33 Cal.4th at p. 1049.) The gang evidence presented here,

14

discussed *ante,* was not extraordinarily inflammatory. The predicate crimes were introduced by means of stipulation, and the underlying evidence related to those crimes was not detailed. Nothing suggests that the nature of the predicate crimes, or defendants' own gang involvement, was so extraordinarily prejudicial that the trial court's denial of the bifurcation motion was arbitrary, capricious, or patently absurd. (See generally *People v. Lewis* (2009) 46 Cal.4th 1255, 1286.) We therefore discern no abuse of discretion in the trial court's decision. (*People v. Hernandez, supra,* at pp. 1050-1051.)

2. *The pretrial photographic lineup was not unduly suggestive.*

a. *Additional facts.*

Prior to trial, Fisher moved to suppress Cruz's out-of-court identification of him, as well as any subsequent in-court identification, on the grounds the "six-pack" photographic lineup Cruz viewed was unduly suggestive. The trial court conducted an Evidence Code section 402 hearing, at which the following testimony was adduced. Prior to being shown any photographs, Cruz described the shooter as a male Black, approximately 20 years old, with a thin build, wearing a white T-shirt and dark pants. He did not notice that the shooter had any "physical oddities." The day after the robbery, an officer showed Cruz a six-pack photographic lineup, and gave Cruz the standard admonitions regarding photographic identifications. After viewing the photographs for approximately one minute, Cruz identified Fisher as the shooter.

At the Evidence Code section 402 hearing, defense counsel showed Cruz the six-pack lineup and asked whether he noticed anything "odd" about the subject in position No. 3, i.e., Fisher. The following exchange transpired:

"[Cruz]: . . . It seems to me the hair.

"[Defense counsel]: Okay. Anything else that seems odd to you?

"[Cruz]: No.

"[Defense counsel]: You don't notice anything strange about that photograph?

"[Cruz]: No.

"[Defense counsel]: Okay. What about his eyes?

"[Cruz]: No. The eyes are the same.

15

"[Defense counsel]:  Does one eye look like it is lower than the other?

"[Cruz]:  Yes.

"[Defense counsel]:  And it's very noticeable, isn't it?

"[Cruz]:  Yes.  I did notice that.

"[Defense counsel]:  And does anybody else in the photograph have a defect like that?

"[Cruz]:  I--when he was pointing with the gun, pointing at me with the gun, I saw that defect."  Cruz did not recall whether he told police the shooter had an eye defect.  Defense counsel asked whether Cruz had mentioned the eye misalignment to the officer when he viewed the photographic lineup.  Cruz stated, "Yes.  But I don't recall."

Defense counsel argued that in the photographic lineup, Fisher's photograph stood out because his eyes were misaligned.  Counsel opined that a fair lineup could not be conducted unless police found "five other people with the same exact physical oddity.  Otherwise it's just a foregone conclusion that you're going to select the person with the abnormal birth defect."  The prosecutor countered that the subject in position six also appeared to have misaligned eyes.  Further, because Cruz never mentioned an eye defect, police would have had no reason to select photographs of other persons with eye problems.

The trial court denied the motion to exclude.  It found Fisher had not shown, as a demonstrable reality, that the photographic lineup was unduly suggestive.  The court observed that the photographs included six male Blacks with similar skin tones.  Three wore white T-shirts, and three wore black T-shirts.  The court observed that in addition to subject No. 6, the subject in photograph No. 1 might also have had something wrong with his right eye.  The court observed that the officer who prepared the photographs had no basis to focus on misaligned eyes, because Cruz never mentioned this feature prior to being shown the photographs.  Further, the court opined that Fisher's eye issue was not particularly prominent or noticeable.  Based on its observation of Fisher in the courtroom from a distance of approximately eight or nine feet, the court noted that it was difficult to discern any defect, explaining, "I'm hard pressed to say as I look at him right now that

16

it's noticeable that one eye is lower than the other. . . . If you asked me right now is one eye lower than the other I'd say no." The court opined that one eye looked somewhat lower than the other in the photograph due to the tilt of Fisher's head. It concluded the lineup was not unduly suggestive. In any event, the court concluded, the photographic lineup was reliable under the totality of the circumstances. Cruz had not indicated his identification of Fisher's photograph was due to the appearance of the eyes.

b. *Discussion.*

" 'Due process requires the exclusion of identification testimony only if the identification procedures used were unnecessarily suggestive and, if so, the resulting identification was also unreliable.' " (*People v. Avila* (2009) 46 Cal.4th 680, 698; *People v. Yeoman* (2003) 31 Cal.4th 93, 123; *Manson v. Brathwaite* (1977) 432 U.S. 98, 106-114; *People v. Cunningham* (2001) 25 Cal.4th 926, 989.) A pretrial identification procedure is unfair if it suggests in advance the identity of the person the police suspect of the crime. (*People v. Brandon* (1995) 32 Cal.App.4th 1033, 1052.) "The question is not whether there were differences between the lineup participants, but 'whether anything caused defendant to "stand out" from the others in a way that would suggest the witness should select him.' " (*People v. Avila, supra,* at p. 698; *People v. Carpenter* (1997) 15 Cal.4th 312, 367, superseded by statute on other grounds as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106; *People v. Yeoman, supra,* at p. 124; *People v. Cunningham, supra,* at p. 990.) An identification procedure is sufficiently neutral where the subjects are " 'similar in age, complexion, physical features and build . . .' [citation]." (*People v. Leung* (1992) 5 Cal.App.4th 482, 500; *People v. Wimberly* (1992) 5 Cal.App.4th 773, 789-790.) "[T]here is no requirement that a defendant in a lineup, either in person or by photo, be surrounded by others nearly identical in appearance. [Citation.] Nor is the validity of a photographic lineup considered unconstitutional simply where one suspect's photograph is much more distinguishable from the others in the lineup." (*People v. Brandon, supra,* at p. 1052; *People v. Carpenter, supra,* at p. 367.)

17

The defendant bears the burden of demonstrating the identification procedure was unreliable. (*People v. Gonzalez* (2006) 38 Cal.4th 932, 942.) Unfairness must be proved as a " 'demonstrable reality, not just speculation.' " (*People v. Cook* (2007) 40 Cal.4th 1334, 1355.) A due process violation occurs only when the identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Ibid.*) We review the trial court's findings of fact deferentially, but independently review the trial court's ruling that a pretrial identification procedure was not unduly suggestive. (*People v. Avila, supra,* 46 Cal.4th at pp. 698-699; *People v. Gonzalez, supra,* at p. 943.)

*People v. Gonzalez, supra,* 38 Cal.4th 932, is instructive. There, the defendant claimed that a photographic lineup was unduly suggestive because (1) he was the only subject wearing gang-type clothing; (2) he had a "droopy eye" in the photograph; and (3) his photograph was discolored. (*Id.* at p. 943.) The California Supreme Court rejected his contentions, explaining nothing about any of the photographs suggested that the defendant's picture should be picked over the others. " 'Because human beings do not look exactly alike, differences are inevitable. The question is whether anything caused defendant to "stand out" from the others in a way that would suggest the witness should select him.' [Citation.] Here, nothing in the lineup suggested that the witness should select defendant. . . . We cannot discern any significant distinctiveness about defendant's eye. In any event, none of the witnesses described the gunman as having a distinctive eye, so any distinctiveness in the photograph would not suggest the witness should select that photograph. Moreover, 'it would be virtually impossible to find five others who had' a similar eye 'and who also sufficiently resembled defendant in other respects.' [Citation.]" (*Id.* at p. 943; see also *People v. Smith* (1980) 109 Cal.App.3d 476, 487 ["It is questionable whether the mere fact that the defendant was the only person in the photographs with a bad eye was improperly suggestive, as it represents only one of many physical characteristics of a face which could be readily identifiable"].)

18

The same is true here. The photographic lineup was not unduly suggestive. It consists of photographs of six different men, including Fisher. All are Black, have similar complexions, and appear to be about the same age. Fisher's photograph does not stand out as distinctively different than the other photographs. Nothing about Fisher's photograph suggests he was the person police suspected of the crime. Cruz did not indicate he selected Fisher's photograph because of the eye abnormality. In fact, at the Evidence Code section 402 hearing, Cruz did not discern anything unusual about the photograph until repeatedly lead to do so by defense counsel. The fact Fisher's photograph accurately depicted his appearance, including his eyes, cannot, by itself, amount to unconstitutional suggestiveness. In any event, we do not discern anything particularly distinctive about Fisher's eyes in the photograph. The trial court, observing Fisher in person, found it difficult to discern any misalignment. The trial court's observations, and Cruz's failure to see anything unusual in the photo until pressed by counsel, demonstrate the photo lineup was not unduly suggestive.

People v. Carlos (2006) 138 Cal.App.4th 907, cited by Fisher, is readily distinguishable. In Carlos, the photographic lineup was suggestive where the defendant's name and identification number were placed directly under his photograph, but the same information was not included below the other photographs. The court concluded: "The problem with the six-pack is obvious—it is not just that Carlos's name and an identification number are printed on the front of the form, it is that they are printed directly below his picture. . . . Although the name placement is not quite an arrow pointing to Carlos, it is plainly suggestive." (Id. at p. 912.) The instant matter is entirely unlike Carlos. Here, nothing was added to the photo array to "point an arrow" at Fisher, and nothing about the composition of the lineup draws special attention to Fisher's photograph. The fact Fisher's photograph accurately depicted his appearance, including his eyes, does not, on the facts presented here, amount to unconstitutional suggestiveness.

Because there was no constitutional defect in the photographic lineup, Cruz's in-court identification was not tainted and neither the pretrial nor the trial identifications of Fisher were required to be excluded. Because we conclude the photographic lineup was

19

not unduly suggestive, we need not reach the question whether Cruz's identifications were nevertheless reliable. (*People v. Gonzalez, supra,* 38 Cal.4th at p. 942; *People v. Yeoman, supra,* 31 Cal.4th at p. 125.)

    3. *The evidence was sufficient to establish the great bodily injury enhancement.*

The jury found Fisher personally and intentionally discharged a firearm, proximately causing great bodily injury to Cruz, within the meaning of section 12022.53, subdivision (d). This finding was the basis for a 25-years-to-life sentence enhancement. Fisher contends the evidence was insufficient to establish that the gunshot wound he inflicted on Cruz constituted great bodily injury, and therefore the true finding must be reversed and the enhancement stricken. Applying the standard of review governing our analysis of a sufficiency of the evidence claim, set forth *ante,* we disagree.

"Great bodily injury 'means a significant or substantial physical injury.' [Citations.]" (*People v. Cross* (2008) 45 Cal.4th 58, 63; see also *People v. Escobar* (1992) 3 Cal.4th 740, 749-750; *People v. Miller* (1977) 18 Cal.3d 873, 883, disapproved on other grounds in *People v. Oates* (2004) 32 Cal.4th 1048, 1067, fn. 8.) The California Supreme Court "has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury. [Citations.] ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] *Where to draw that line is for the jury to decide."* (*People v. Cross, supra,* at p. 64, italics added.) To be considered significant or substantial, the injury need not be so grave as to cause disfigurement, impairment, loss of bodily function, or permanent, prolonged, or protracted bodily damage. (*People v. Escobar, supra,* at p. 750.) The injury need not meet any particular standard of severity or duration, "but need only be 'a substantial injury *beyond* that inherent in the offense itself[.]' " (*People v. Le* (2006) 137 Cal.App.4th 54, 59; *People v. Escobar, supra,* at pp. 746-747, 750.)

Here, Cruz was shot in the forearm. Cruz was treated by paramedics at the scene, who "rush[ed] to get him to the hospital." The wound caused "a lot" of bleeding, so much so that Cruz's arm was "covered in blood." Edwards related that neighbors called

20

an ambulance for Cruz because he was " 'bleeding . . . real bad.' " Cruz was treated at the hospital. The following day, Cruz was unable to write easily because of the pain. The bullet wound left a scar, which Cruz displayed for the jury. Under these circumstances, we conclude the evidence was sufficient. (See *People v. Lopez* (1982) 131 Cal.App.3d 565, 572-573; *People v. Miller, supra,* 18 Cal.3d at p. 883.)

Fisher advances several arguments in support of his argument to the contrary, none persuasive. He contends that Cruz's gunshot wound did not constitute great bodily injury because it "appears [he] was grazed by the bullet." This mischaracterizes the record. As discussed, Cruz clearly testified he was shot in the arm, not merely grazed. Moreover, it seems unlikely paramedics would have rushed to get him to the hospital, had the bullet only grazed his arm. Fisher further argues the bullet wound did not amount to great bodily injury because a scar could result from a minor wound; blood loss could stem from a minor injury; and without a photograph of the injury, "[t]here is no way this Court can determine the victim suffered great bodily injury based on this record." Fisher confuses the role of an appellate court with that of the jury. His argument amounts to a request that we reweigh the evidence on appeal. This is not the function of an appellate court. (Evid. Code, § 312; *People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Maury* (2003) 30 Cal.4th 342, 403; *People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.) Finally, he argues that Cruz's gunshot wound was not as profound or as disabling as gunshot wounds found in other cases to constitute great bodily injury. (See, e.g., *People v. Le, supra,* 137 Cal.App.4th at pp. 57-58; *People v. Mendias* (1993) 17 Cal.App.4th 195, 201; *People v. Lopez* (1986) 176 Cal.App.3d 460, 465.) The fact more, different, or stronger evidence may have been present in other cases does not establish the evidence was insufficient here; each case must be considered on its own facts. (See *People v. Solis* (2001) 90 Cal.App.4th 1002, 1010.)

    4. *The trial court did not prejudicially err by refusing to instruct on accident.*

Fisher requested that the jury be instructed on the defense of accident. The relevant instruction, CALCRIM No. 3404, provides that the defendant is not guilty of a specified crime if he acted "without the intent required for that crime, but acted instead

accidentally. You may not find the defendant guilty of [the specified crime] unless you are convinced beyond a reasonable doubt that he . . . acted with the required intent." (See *People v. Villanueva* (2008) 169 Cal.App.4th 41, 53.) Fisher argued that there was substantial evidence to support the instruction, because the gun might have fired accidentally when Cruz attempted to push the gun away. The trial court suggested that "multiple inferences" could be gleaned from Cruz's testimony, including that Fisher accidentally pulled the trigger while he and Cruz were jostling with the gun. Nonetheless, the court refused to give the instruction, concluding that the evidence was insufficient to support it. Fisher contends this was error. He posits that from the evidence, the jury could have concluded the gun fired accidentally, and therefore the defense of accident was applicable to the section 12022.53 firearm enhancements, though not the robbery charge. The omission of the instruction, he contends, requires reversal of the section 12022.53, subdivisions (c) and (d) enhancements.[3]

A trial court must instruct the jury, upon request, on any theory of defense that is supported by substantial evidence. (*People v. Sisuphan* (2010) 181 Cal.App.4th 800, 806; *People v. Maury, supra,* 30 Cal.4th at p. 424; *People v. Salas* (2006) 37 Cal.4th 967, 982.) In determining whether an instruction is required, we do not determine the credibility of the defense evidence, but only whether there was evidence which, if credited by the jury, was sufficient to raise a reasonable doubt. (*People v. Salas, supra,* at p. 982.) A court is not obliged to instruct on theories that lack substantial evidentiary support. (*People v. Manriquez* (2005) 37 Cal.4th 547, 587-588; *People v. Bohana* (2000) 84 Cal.App.4th 360, 370.) Substantial evidence is evidence that a reasonable jury could

---

[3] Section 12022.53 provides three tiers of punishment for a defendant found to have used a firearm in the commission of an offense. Subdivision (b) provides for a 10-year enhancement when the defendant *uses* a firearm. Subdivision (c) provides for a 20-year enhancement when the defendant "personally and intentionally *discharges* a firearm." (Italics added.) Subdivision (d) provides for a 25-years-to-life enhancement when the defendant "personally and intentionally discharges a firearm and proximately *causes great bodily injury*" or death. (Italics added.)

22

find persuasive. (*People v. Benavides* (2005) 35 Cal.4th 69, 102; *People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.) We independently review a trial court's alleged error in failing to instruct on a defense. (*People v. Sisuphan, supra,* at p. 806; *People v. Oropeza, supra,* at p. 78.)

Under section 26, paragraph Five, no crime is committed where the person who committed the charged act or omission did so "through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." The accident defense is a "claim that the defendant acted without forming the mental state necessary to make his actions a crime. [Citation.]" (*People v. Gonzales* (1999) 74 Cal.App.4th 382, 390.) The burden is on the defendant to establish the absence of evil design, intention and culpable negligence. (*People v. Thurmond* (1985) 175 Cal.App.3d 865, 871.)

The People argue that the instruction was inapplicable because there was no showing Fisher acted without an "evil design." The People explain: "Appellant argues that the accident and misfortune instruction should have applied to the *gun enhancements*. But the instruction does not apply if appellant's underlying conduct (even without the enhancements) was criminal. In short, a robber who carries a loaded gun and places it on the victim's head is not entitled to an accident [and] misfortune instruction when the gun fires." (Italics in original.)

The People cite no authority for their position, and *People v. Jones* (1991) 234 Cal.App.3d 1303, suggests the contrary. In *Jones,* the evidence showed the defendant armed himself with a shotgun and accompanied a friend to remove the power steering column from a supposedly abandoned car. En route, the duo's car was pulled over by a deputy sheriff. When the sheriff repeatedly asked for Jones's identification, Jones pulled the shotgun out and pointed it at the deputy's head. The deputy attempted to knock the shotgun barrel away. At that moment, the gun discharged, striking the deputy in the arm, wrist, and chest. (*Id.* at pp. 1308-1309.) When arrested shortly thereafter, Jones said, " 'I didn't mean to shoot him.' " (*Ibid.*) Jones also testified at trial that the shooting was an accident. (*Id.* at p. 1314.)

23

After his conviction for attempted murder and related firearm enhancements, Jones contended on appeal that the trial court had erred by failing to instruct, sua sponte, on the defense of accident and misfortune. *Jones* concluded there was sufficient evidence adduced at trial from which a juror could have concluded the firearm discharged by accident, and the trial court therefore erred by not giving an accident instruction. The error, however, was harmless. (*People v. Jones, supra,* 234 Cal.App.3d at p. 1314.) *Jones* did not expressly consider the question of the defendant's "evil design," but implicit in its holding is the proposition that accident is a potential defense even when a gun is unlawfully pointed at a victim, if there is evidence the gun discharged accidentally.

The People also argue, and the trial court found, that there was no substantial evidence to support an accident instruction. Indeed, the only evidence in the record was that Fisher pointed the gun at Cruz during the robbery and Cruz attempted to "move the gun" by pushing it away from his head. During cross examination, Cruz agreed that he reached up with his right hand and "grabbed the gun," and "there was a struggle for a bit." This evidence of accident was minimal at best. Unlike in *Jones,* Fisher did not testify that the shooting was an accident, and there was no evidence of any statement by Fisher suggesting the shot was accidental. Moreover, after the gun discharged, Fisher did not behave in a manner suggesting he was surprised or upset by the gunshot. Instead, he calmly continued with commission of the robbery.

Assuming arguendo that this evidence was substantial enough to warrant an inference that the shooting was an accident, we discern no prejudice under any standard. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *Chapman v. California* (1967) 386 U.S. 18, 28; *People v. Gonzales, supra,* 74 Cal.App.4th at p. 391.) An accident instruction would have added little to the instructions already given. Both CALCRIM Nos. 3148 and 3149 informed jurors that in order to find the section 12022.53 subdivision (c) or (d) enhancements true, the People had to prove: "1. The defendant personally discharged a firearm during the commission or attempted commission of the crime; [¶] AND [¶] 2. *The defendant intended to discharge the firearm.*" (Italics added.) CALCRIM No. 252 advised jurors that in order to find the enhancement allegations true, the defendant "must

24

not only commit the prohibited act . . . but must do so with wrongful intent. A person acts with wrongful intent when he or she *intentionally does a prohibited act on purpose . . . .*" (Italics added.) During closing argument, Fisher's counsel urged that the jury could find Fisher personally used a gun, but accidentally fired it.[4]

From the instructions given, highlighted by counsel's argument, any reasonable juror would have understood that the section 12022.53, subdivisions (c) and (d) allegations could be found true only if the People proved Fisher shot intentionally, i.e., "on purpose." The accidental firing of a gun is a readily understood, commonsense notion, and jurors would have fully understood from the instructions given that if the gun fired accidentally, the enhancements could not be found true. The jury made express findings on the firearm enhancements that Fisher "personally and intentionally discharged a firearm," indicating it rejected the theory that the gun discharged accidentally. (See *People v. Jones, supra,* 234 Cal.App.4th at pp. 1314-1315 [failure to instruct on accident defense harmless where other proper instructions adequately guided the jury in reaching the relevant factual determination].)

Although Fisher argues that the failure to give an accident instruction "prevented the jury from having any basis to evaluate that defense and thus deprived appellant of federal due process of law," this argument is without substance. It is unreasonable to assume the jury concluded Fisher "had liability for the discharge of the gun merely because he was using it in the commission of a crime." The instructions given did not allow for any such inference. " '[W]e must assume that jurors are intelligent persons and

---

4       Counsel argued: "Did the defendant or whoever the shooter was intentionally shoot the gun? That's an issue you're going to have to decide. It says in the instructions you have to prove beyond a reasonable doubt that he intentionally fired the gun. What do you know? The gun was pointed at his head. Mr. Cruz said he reached up to grab it. There was a struggle, and then he was shot right here in the arm. Now, did the shooter intend to shoot on purpose or was it more of an accident? Each is reasonable. Each could happen. If it is reasonable that the shooter did not intend to shoot the gun, you cannot find that particular allegation true."

25

capable of understanding and correlating all jury instructions which are given.' [Citation.]" (*People v. Richardson* (2008) 43 Cal.4th 959, 1028.)

*Martin v. Ohio* (1987) 480 U.S. 228, cited by Fisher, likewise does not assist him. In *Martin,* the United States Supreme Court held that the burden of proving self-defense could be placed on the defendant. (*Id.* at p. 233.) The court noted "[i]t would be quite different if the jury had been instructed that self-defense evidence could not be considered in determining whether there was a reasonable doubt about the State's case, *i.e.,* that self-defense evidence must be put aside for all purposes unless it satisfied the preponderance standard. Such an instruction would relieve the State of its burden . . . ." (*Id.* at pp. 233-234.) Nothing in the instructions here remotely suggested that the jury was required to disregard evidence the gun fired accidentally. To the contrary, the defense argued the theory, and the instructions on section 12022.53, subdivisions (c) and (d), expressly required that the jury consider whether Fisher had the requisite intent. Any error in failing to instruct on accident, therefore, was harmless under any standard, and did not violate Fisher's due process rights.

### 5. *Issues related to purported juror misconduct.*

#### a. *Additional facts.*

##### (i) *Jurors' note requesting an escort.*

Jury deliberations began on Thursday, November 6, 2008, at 2:35 p.m. On Friday, November 7, 2008, while the jury was still engaged in deliberations, it sent a note to the court stating: "Following any verdict can we request escort to jury room and parking structure. [¶] Family and friends of the defendants have been in court, and have used same elevators and parking areas, and this was a trial involving gang members."

The next court day, Monday, November 10, 2008, the court and the parties discussed the note. The court observed: "I noticed a couple days, at least on Thursday and Friday, maybe Wednesday and Thursday . . . there were additional individuals in the back of the court that came in as a group, young Black males with dark shirts and T-shirts on."

26

Defense counsel requested an evidentiary hearing at which each juror could be individually questioned regarding the note and the men in the courtroom. In support of this request, defense counsel apparently filed a written motion or declaration.[5] According to the parties' comments regarding that motion, Fisher's mother averred that the individuals in question were members of Windom's gang. The jurors' note, in the view of the defense, indicated "[s]omething has happened that has frightened this jury." Defense counsel opined that gang associations tend to intimidate jurors, and therefore jurors might be inclined to convict in order to avoid "putting [defendants] back on the street."

The prosecutor countered that the jurors had not referred to the persons in question as gang members, and nothing indicated that the individuals had spoken to jurors. The prosecutor also noted the irony of the situation, in that he had previously requested certain associates of Windom's gang be excluded from the courtroom during a hearing out of the presence of the jury, but defense counsel had objected. The prosecutor urged that if jurors were actually intimidated, they would be likely to render a verdict *favorable* to the defendants. The note, in the prosecutor's view, was not unusual given the nature of the case, and did not indicate the jury had been tampered with.

The trial court, citing *In re Hamilton* (1999) 20 Cal.4th 273, concluded an inquiry was not required. The jury returned its verdicts shortly thereafter.

(ii) *Fisher's new trial motion.*

Fisher subsequently filed a motion for a new trial on ground of juror misconduct. Appended to that motion was a declaration from Fisher's mother, Catrina Anderson. In the declaration, Anderson stated she had attended the trial. On the day closing arguments transpired, five purported gang members all similarly dressed in "gang attire," entered the courtroom and sat down on the same side as the jury. As they watched the trial, they whispered to each other and acted "disrespectful." Three of the men stared at the jury in

---

5    Although the parties discussed the written motion, it does not appear to be part of the record on appeal.

a "very intimidating" fashion, "maddogging the jury." One of the jurors "was constantly looking over" at the men out of the corner of her eye, and looked worried and concerned. At the elevators, the men stood waiting with the jurors, and continued their attitude of disrespect and "postur[ed] like a bully would do." They "star[ed] the jury up and down in an intimidating way." Anderson informed defense counsel.

Fisher's motion argued that a new trial was required because (1) "there was juror misconduct," (2) there was "spectator misconduct," and (3) the trial court erred by failing to hold a hearing and receive evidence after jurors sent the note. According to Fisher, the timing of the jurors' note indicated the jury had become biased against him after the purported gang members' behavior.

The trial court[6] conducted a hearing on the motion, at which Anderson testified. Her testimony was generally consistent with the information contained in her declaration. In addition, she stated that two of the men had " 'Hustler' " tattooed on their necks, the name of codefendant Windom's gang. The young men who were waiting at the elevator "rush[ed]" onto the elevator with four or five jurors.

After hearing argument from the parties, the trial court denied the motion. It observed that a request for an escort was "a common occurrence." The court found there was no evidence of coercive activity, no indication the events at issue interfered with the jury's deliberative process, no direct or circumstantial evidence of juror misconduct, and no showing that the events at issue influenced the verdict.

b. *Discussion.*

(i) *The trial court did not abuse its discretion by failing to conduct an evidentiary hearing after receiving the jurors' note.*

Fisher contends that the trial court erred by failing to conduct a further inquiry and interview jurors after receiving the note. We disagree. "An accused has a constitutional right to a trial by an impartial jury. [Citations.] An impartial jury is one in which no

---

[6]    A different judge heard and ruled on the new trial motion.

member has been improperly influenced [citations] and every member is ' "capable and willing to decide the case solely on the evidence before it" ' [citations]." (*In re Hamilton, supra,* 20 Cal.4th at pp. 293-294.) A trial court has a duty to inquire into allegations of misconduct during jury deliberations and conduct whatever inquiry is reasonably necessary to determine whether a juror should be discharged. (*People v. Martinez* (2010) 47 Cal.4th 911, 941-942; *People v. Ledesma* (2006) 39 Cal.4th 641, 738; *People v. Cleveland* (2001) 25 Cal.4th 466, 476-477; § 1120.)

However, " 'not every incident involving a juror's conduct requires or warrants further investigation. "The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court." ' [Citations.] ' "[A] hearing is required only where the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his duties and would justify his removal from the case." ' [Citation.]" (*People v. Martinez, supra,* 47 Cal.4th at p. 942; *People v. Dykes* (2009) 46 Cal.4th 731, 809-810; *People v. Cleveland, supra,* 25 Cal.4th at pp. 478-479.) A defendant is not entitled to such a hearing as a matter of right. (*People v. Dykes, supra,* at p. 809.) The decision whether and how to investigate allegations of juror misconduct rests within the trial court's sound discretion. (*People v. Engelman* (2002) 28 Cal.4th 436, 442.)

We discern no abuse of discretion here. The evidence presented by the defense—i.e., the jurors' note and the conduct of the five men—did not constitute good cause to doubt the jurors' ability to perform their duties, and would not have justified their removal from the case. There was no evidence *jurors* engaged in any misconduct. There was also no showing the jurors might have been biased against Fisher as a result of the conduct of the five men. We do not believe the jurors' mere request for an escort from the building must be interpreted to indicate they had suddenly become biased against the defendants. In fact, the trial court indicated such requests were quite common.

29

Several authorities inform our analysis. In *In re Hamilton, supra,* 20 Cal.4th 273, during the guilt phase of a capital case, a sitting juror believed she saw the defendant's sister and the sister's boyfriend in a parked car in an alley behind her home. The car sped off when the pair saw the juror. The defendant argued that the juror's fear as a result of the incident caused or exacerbated her actual bias against him. (*Id.* at p. 304.) The California Supreme Court rejected this argument, concluding that the "objective circumstances g[a]ve rise to no substantial likelihood that the encounter resulted in [the juror's] actual bias against" the defendant. (*Id.* at p. 306.) *Hamilton* "question[ed] whether a convicted person can ever overturn the verdict on grounds that persons *acting in his behalf* deliberately sought to influence the jury. Certainly no such claim could ever be valid where the *accused himself* had instigated the incident; a party cannot profit by his or her own wrongdoing. But even where, as here, there is no evidence petitioner was directly involved, recognition of such a claim suggests tempting opportunities for accuseds' allies to manufacture challenges against subsequent convictions." (*Id.* at p. 305.) *Hamilton* found it unnecessary to resolve the issue, however, because the incident afforded no basis for relief. The court explained: "Any claim of direct jury tampering, real or imagined, appears to fail at the threshold under California law. '[W]hen the alleged misconduct involves an unauthorized communication with or by a juror, the presumption [of prejudice] does not arise unless there is a showing that the content of the communication was about the matter pending before the jury, i.e., the guilt or innocence of the defendant. [Citations.]' [Citations.] As described by [the juror], the alley incident included no 'communication' about the trial, only a brief, nonverbal observation of persons parked outside her home. [¶] Finally, if the incident, real or imagined, might be interpreted as an improper attempt to intimidate [the juror] by silent menace, the result is no different. The objective circumstances give rise to no substantial likelihood that the encounter resulted in [the juror's] actual bias against petitioner." (*Id.* at pp. 305-306.) The episode was brief, isolated, and ambiguous, and the persons in the alley did not approach or speak to the juror. (*Id.* at p. 306.)

In *People v. Brown* (2003) 31 Cal.4th 518, following the jury's death penalty verdict, jurors discussed the case with counsel. All 12 expressed concern that the defendant's gang would retaliate against them as a result of the verdict. In particular, one juror believed he might have been followed by a gang member or a member of the defendant's family. The jury foreperson, however, stated that concern over retaliation did not affect the jury's deliberations. According to the prosecutor, defense counsel had unsuccessfully attempted to elicit contrary information. *Brown* concluded that the trial court did not abuse its discretion by failing to hold a hearing into jury misconduct in connection with the defendant's new trial motion. The defendant had failed to "demonstrate 'a strong possibility that prejudicial misconduct ha[d] occurred' . . . , and no material fact was in dispute." (*Id.* at p. 582.)

In *People v. Martinez, supra,* 47 Cal.4th 911, the trial court was held to have acted within its discretion when it declined to conduct an inquiry into alleged misconduct involving Juror No. 12. (*Id.* at p. 942.) In dicta, *Martinez* distinguished the trial court's decision to conduct an inquiry as to another juror, No. 6. "According to a police report, Juror No. 6 told a police officer that she had received a harassing phone call and believed it may have been connected to defendant's case as an attempt to intimidate her. The court conducted an inquiry, and it appeared that the phone call was unrelated to defendant's case. At the hearing, Juror No. 6 explained that she thought it would not affect her impartiality. Given that the police report stated Juror No. 6 believed the call was intimidating and related to the instant case, this was clearly the kind of matter that would affect a juror's impartiality, and ' "once a juror's competence is called into question, a hearing to determine the facts is clearly contemplated." ' " (*Id.* at p. 942, fn. 5.)

Here, as in *Hamilton* and *Brown,* an inquiry was not required. There was no evidence the jurors committed any misconduct whatsoever. The episodes with the men were brief and ambiguous, and there was no evidence the men spoke to any juror. There was no evidence of any communication related to the guilt or innocence of either defendant. (See *In re Hamilton, supra,* 20 Cal.4th at p. 306.) We are unpersuaded by

Fisher's claim that jurors became biased against him because they were intimidated by the persons in the elevator and courtroom, whom they likely perceived to be gang members. In our view, this inference is entirely speculative. The conduct at issue here—i.e., that the men in question stared at jurors in a hostile fashion—is less serious than the conduct at issue in *Hamilton* and *Brown,* and far less likely to have resulted in juror incompetence than the intimidating telephone call, directed to a particular juror's home, mentioned in *Martinez.* As in *Hamilton,* the objective circumstances did not give rise to a substantial likelihood that the jurors' encounter with the men resulted in actual bias.

Moreover, the note itself did not hint at any actual bias *against the defendants.* Fisher's argument, that "[t]he note on its face established a strong likelihood that the jurors['] deliberation process had been influenced by events other than testimony received in court," presumes too much. Even if jurors were uncomfortable with or afraid of the men, we do not believe this fact alone would require a conclusion that jurors were biased or the deliberative process was compromised. We decline to hold that the mere fact jurors sent a note requesting an escort demonstrated the jury was not fair and impartial.

*Ham v. South Carolina* (1973) 409 U.S. 524, cited by Fisher, is inapposite. *Ham* involved the trial of a young, Black man who was heavily involved in the civil rights movement. He contended law enforcement officers had framed him on drug charges. The trial court denied his request to ask, during voir dire, whether prospective jurors harbored racial bias. The United States Supreme Court concluded the trial court's refusal to make any such inquiry, despite the defendant's timely request, required reversal of the judgment. (*Id.* at pp. 526-527, 529.) In contrast, the instant case involves not voir dire, but the questioning of sitting jurors in a wholly different factual scenario. *Ham* does not, therefore, compel the result Fisher seeks.

(ii) *Fisher's new trial motion, based on purported juror misconduct, was properly denied.*

In the same vein, Fisher contends the trial court erred by denying his motion for a new trial. He asserts that the jury considered extraneous information during

32

deliberations, establishing a presumption of prejudice. He further urges that the jury was actually biased against him. We disagree.

A trial court is vested with broad discretion to act upon a motion for new trial. (*People v. Dykes, supra,* 46 Cal.4th at p. 809.) We review independently the trial court's denial of a new trial motion based on alleged juror misconduct, but " ' "accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." ' " (*People v. Gamache* (2010) 48 Cal.4th 347, 396; *People v. Dykes, supra,* at p. 809.)

A juror's receipt of evidence not submitted at trial constitutes misconduct. (*People v. Dykes, supra,* 46 Cal.4th at p. 809.) "Juror misconduct gives rise to a presumption of prejudice [citation]; the prosecution must rebut the presumption by demonstrating 'there is no substantial likelihood that any juror was improperly influenced to the defendant's detriment' [citations]. In contrast, in the absence of misconduct, the burden remains with the defendant to demonstrate prejudice under the usual standard for ordinary trial error. [Citations.]" (*People v. Gamache, supra,* 48 Cal.4th at p. 397; *People v. Bennett* (2009) 45 Cal.4th 577, 626.) " '[I]nadvertent exposure to out-of-court information is not blameworthy conduct, as might be suggested by the term "misconduct," [but] nevertheless gives rise to a presumption of prejudice, because it poses the risk that one or more jurors may be influenced by material that the defendant has had no opportunity to confront, cross-examine, or rebut.' [Citation.]" (*People v. Gamache, supra,* at p. 398.) We will "set aside a verdict only where there is a substantial likelihood of juror bias. [Citation.] We will find such bias if the misconduct is inherently and substantially likely to have influenced the jury. Alternatively, even if the misconduct is not inherently prejudicial, we will nonetheless find such bias if, after a review of the totality of the circumstances, a substantial likelihood of bias arose. [Citation.]" (*People v. Bennett, supra,* at pp. 626-627.) " 'The standard is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' [citation] and of society's strong competing interest in the stability of criminal verdicts [citations]." (*In re Hamilton, supra,* 20 Cal.4th at p. 296.) "If the [criminal justice] system is to function at all, we must tolerate a

33

certain amount of imperfection short of actual bias.' [Citation.]" (*Ibid.*) Trivial violations that do not prejudice the parties do not require removal of a sitting juror. (*People v. Wilson* (2008) 44 Cal.4th 758, 839.)

We discern neither a substantial likelihood of juror bias, nor any receipt of extrinsic information by jurors. As we have discussed, the sum total of the basis for the jury "misconduct" claim is that five young men glared at jurors and rode the elevator with several; and the jury subsequently sent a note asking for an escort. This evidence reveals no misconduct by jurors. Fisher's argument that the "menacing stares" from the men constituted the receipt of extrinsic evidence is not persuasive. That several young men directed dirty looks to jurors and rode the elevator with them is not tantamount to a jury's receipt of extrinsic evidence about the case, and Fisher cites no authority convincing us otherwise. Finally, for the reasons discussed in the preceding section, Fisher has failed to establish a substantial likelihood of juror bias based either upon the note or the men's conduct. The trial court correctly denied the new trial motion.

6. *The one-year section 667.5, subdivision (b) prior prison term enhancement must be stricken.*

The trial court imposed both a section 667.5, subdivision (b) one-year prior prison term enhancement and a five-year section 667, subdivision (a)(1) enhancement based upon Fisher's prior conviction for assault with a deadly weapon in case No. SA058153. As the People concede, it is not permissible for a court to impose both a section 667.5, subdivision (b) enhancement and a section 667, subdivision (a)(1) serious felony enhancement based on the same conviction. (*People v. Jones* (1993) 5 Cal.4th 1142, 1149-1152; *People v. Solis, supra,* 90 Cal.App.4th at p. 1021.) We therefore order the one-year enhancement stricken. (*People v. Solis, supra,* at p. 1021.)

## DISPOSITION

The one-year enhancement imposed pursuant to section 667.5, subdivision (b) is stricken. The clerk of the superior court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections. As so modified, the judgment is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

35



NAME: Ronald Fisher

CDC NO: E24258 HOUSING: B6/1804P

PELICAN BAY STATE PRISON
P.O. BOX
CRESCENT CITY, CA 95532

PELICAN BAY
G.P. UNIT B-6

PELICAN BAY
G.P. UNIT B-6

2254    JAN - 5 2011

UNiteD STATES DistRict CouRt
CENtRaL DistRict of CaLiforNia
WEStERN DiviSioN

312 NoRtH SPRiNG StREet, Room G-
Los ANgeles, CA, 90012

LEGAL MAIL #1

Case 2:11-cv-00256-DMG-OP   Document 1   Filed 01/07/11   Page 128 of 131   Page ID #:128

R Parker 1/2/11



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
312 North Spring Street, Room G-8  Los Angeles, CA  90012
Tel: (213) 894-3535

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

**TERRY NAFISI**
District Court Executive
and Clerk of Court

Friday, January 07, 2011

RONALD FISHER
F-24258
P.O. BOX 7500
CRESCENT CITY, CA 95532

Dear Sir/Madam:

Your petition has been filed and assigned civil case number      CV11- 256 DMG (OP)

Upon the submission of your petition, it was noted that the following discrepancies exist:

1. You did not pay the appropriate filing fee of $5.00.  Submit a cashier's check, certified bank check, business or corporate check, government issued check, or money order drawn on a major American bank or the United States Postal Service payable to 'Clerk U.S. District Court'.  If you are unable to pay the entire filing fee at this time, you must sign and complete this court's Prisoner's Declaration In Support of Request to Proceed In Forma Pauperis in its entirety.  The Clerk's Office will also accept credit cards (Mastercard, Visa, Discover, American Express) for filing fees and miscellaneous fees.  Credit card payments may be made at all payment windows where receipts are issued.

X  2. The Declaration in Support of Request to Proceed in Forma Pauperis is insufficient because:

   (a) You did not sign your Declaration in Support of Request to Proceed in Forma Pauperis.

   X (b) Your Declaration in Support of Request to Proceed in Forma Pauperis was not completed in its entirety.

   X (c) You did not submit a Certificate of Prisoner's Funds completed and signed by an authorized officer at the prison.

   (d) You did not use the correct form.  You must submit this court's current Declaration in Support of Request to Proceed in Forma Pauperis.

   (e) Other: _____

Enclosed you will find this court's current Prisoner's Declaration in Support of Request to Proceed in Forma Pauperis, which includes a Certificate of Funds in Prisoner's Account Form.

Sincerely,

Clerk, U.S. District Court

APEDRO

By: _____

Deputy Clerk

CV-111 (07/06)        **NOTICE re: DISCREPANCIES FOR FILING OF HABEAS CORPUS PETITION**



**TERRY NAFISI**
District Court Executive
and Clerk of Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**
312 North Spring Street, Room G-8  Los
Angeles, CA  90012
Tel: (213) 894-7984

**SOUTHERN DIVISION**
411 West Fourth Street, Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4570

**EASTERN DIVISION**
3470 Twelfth Street, Room 134
Riverside, CA 92501
(951) 328-4450

Friday, January 07, 2011

**RONALD FISHER**
**F-24258**
**P.O. BOX 7500**
**CRESCENT CITY, CA 95532**

Dear Sir/Madam:

A  X  Petition for Writ of Habeas Corpus was filed today on your behalf and assigned civil case number CV11- 256 DMG (OP)

A      Motion pursuant to Title 28, United States Code, Section 2255, was filed today in criminal case number _____ and also assigned the civil case number _____

A      Motion for Extension of Time to File Habeas Corpus Petition was filed today on your behalf and assigned civil case number _____

Please refer to these case numbers in all future communications.

Please Address all correspondence to the attention of the Courtroom Deputy for:

District Court Judge _____

X Magistrate Judge ___ **Oswald Parada** _____

at the following address:

| | | |
|---|---|---|
| U.S. District Court | Ronald Reagan Federal | X U.S. District Court |
| 312 N. Spring Street | Building and U.S. Courthouse | 3470 Twelfth Street |
| Civil Section, Room G-8 | 411 West Fourth St., Suite 1053 | Room 134 |
| Los Angeles, CA  90012 | Santa Ana, CA  92701-4516 | Riverside, CA 92501 |

The Court must be notified within fifteen (15) days of any address change.  If mail directed to your address of record is returned undelivered by the Post Office, and if the Court and opposing counsel are not notified in writing within fifteen (15) days thereafter of your current address, the Court may dismiss the case with or without prejudice for want of prosecution.

Very truly yours,

Clerk, U.S. District Court

By: ___APEDRO_____

Deputy Clerk

CV-17 (06/09)           LETTER re FILING H/C PETITION or 28/2255 MOTION